UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH AGUILERA, individually and on Behalf of herself and all others similarly situated, ] ] ] Plaintiff, ] ] v. ] ] NUWAVE, LLC, ] ] Defendant. ] | Case No. 1:18-CV-3550 The Hon. Edmond Chang (Jury Trial Demanded) |

## MOTION TO BIFURCATE DISCOVERY

NOW COMES Defendant NUWAVE, LLC, by its attorneys Peter C. Morse and Melvin W. Gaddy, of MORSE BOLDUC & DINOS, LLC, and moves this Honorable Court pursuant to Fed. R. Civ. P. 26(c)(1) to enter an order bifurcating preliminary discovery into two phases; the first of which shall focus only on the merits of named plaintiff Elizabeth Aguilera's claims, and the second of which shall focus on certification issues; and enter a stay with respect to all discovery in phase II prior to this court's ruling on a motion for summary judgment with respect to Plaintiff's claims; and in support thereof states as follows:

### INTRODUCTION

In *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir.2001), the Seventh Circuit cautioned that "[a] nationwide class in what is fundamentally a breach of warranty action … poses serious problems" regarding "the manageability of the suit, and thus the propriety of class certification."

1

Defendant NuWave, LLC manufactures infrared ovens for individual residential use. This product warranty class action seeks relief on behalf of all 6 million purchasers of ovens with allegedly defective domes, which are components of NuWave ovens. NuWave ovens are covered by an enforceable express limited warranty. Aguilera herself made no warranty claim to NuWave, and chose not to avail herself of the exclusive remedy offered by the warranty. To minimize litigation costs to all sides, Defendant intends to seek summary judgment. Defendant thus seeks to bifurcate discovery in two phases. In that the relevant factors favor bifurcation, Defendant proposes a two-phase structure. The first phase should focus on the merits of Aguilera's warranty claim. The second phase of class discovery should not begin until this court shall rule on summary judgment. While it is not Defendant's intention to litigate the substantive issues this case presents here, a brief review of the caselaw suggests the extent to which product warranty class actions are almost always impermissible.

### I. PRODUCT WARRANTY CLASS ACTIONS ARE STRONGLY DISFAVORED.

The Seventh Circuit in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 674 (7th Cir. 2001), explained that "[a] nationwide class in what is fundamentally a breach of warranty action coupled with a claim of fraud, poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification." The Court noted significant problems to class certification. These included variations in representations made to purchasers by the Defendant, variations in the product's use by Plaintiffs, and variations in state law. The Court explained each of these differences "cut strongly against nationwide classes," and such "potential sources of variation account for the fact that <u>few warranty classes have ever been certified as class actions</u>— let alone nationwide classes, with additional choice-of-law problems that complicate such a venture." *Szabo*, 249 F.3d at 674.

The Seventh Circuit in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir.2002) reached a similar result for similar reasons. Judge Easterbrook reversed Southern District of Indiana Judge Baker's certifying nationwide classes of SUV owners/lessees, and tire owners/lessees. Such a class could not meet Rule 23's commonality and superiority requirements where purchaser class members in each state would be subject to different rules. The Court refused to certify subclasses as to each of the 50 states because doing so "is not manageable." *Id.* at 1018.

In *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 509 (7th Cir.2006), the Seventh Circuit affirmed Northern District of Illinois Judge Conlon's denying certification of a class inclusive of all post-1999 Diet Coke drinkers, alleging unjust enrichment and violation of Illinois Consumer Fraud and Deceptive Practices Act (ICFA) as a result of company's failure to disclose differences between fountain Diet Coke containing aspartame and saccharin and bottled Diet Coke, containing only aspartame. The class was not ascertainable.

In *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir.2008), the Seventh Circuit reversed Northern District of Illinois Judge Leinenweber's certifying class action brought by buyers against seller of clothes dryer as containing deceptive representations as to "rust resistant" nature of stainless steel drum under Tennessee Consumer protection laws. Posner reversed, decertifying the class and holding that the Rule 23(b)(3) predominance requirement not met.

In *In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748 (7th Cir.2011), the Seventh Circuit affirmed Northern District of Illinois Judge Coar's denying certification to class of purchasers of a small toy that incorporated brightly colored beads which became date rape drug when ingested by children. Judge Easterbrook correctly held that while purchasers suffered injury in fact, purchasers failed to establish they would fairly and adequately protect interests of proposed class in action challenging adequacy of toy's recall program; putative representatives sought relief that

duplicated remedy most purchasers had already received, namely, a refund, relief of a refund remained available to all members of putative class, and class would result in imposition of high transaction costs associated with attorneys' fees and giving of notice to class.

The court further found that this action in which consumers who purchased allegedly defective toys that, when ingested, caused some children who used toy to become ill, but who had not experienced illness themselves, was not manageable as nationwide class of consumers. Moreover, punitive-damages claims depended on state law; and different states had different standards for determining whether product's distributor could be liable for punitive damages, individual notice to all consumers who purchased product would have been impossible, and identities of all purchasers of product were unknown.

Similarly, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir.2011), affirmed Northern District of Ohio Judge Adam's granting a Motion to Dismiss an alleged nationwide deceptive advertising consumer class action. A nationwide class could not satisfy predominance requirement. The Court rejected class plaintiff's argument that if given time to develop record, they could establish predominance. Citing *Bridgestone/Firestone*, *Szabo*, and others, the court found that nationwide class involving laws of different states are impermissible. While Sixth Circuit precedent is not binding on the Seventh Circuit, its authority is still persuasive because of the extent of its reliance on Seventh Circuit law. Moreover, this case's rationale serves a substantially persuasive basis as to why nationwide class action involving laws of different states should never even reach the certification stage.

Here, there are numerous issues that can, and should be resolved on summary judgment and before any motion for class certification is brought. We believe discovery will show that Elizabeth Aguilera has no valid warranty claim against NuWave and therefore could not be an

4

adequate class representative for any purported class identified in the complaint. We further believe that such discovery will reveal that class treatment for this matter is impermissible. Limited discovery as to Aguilera's warranty claim will reveal the warranty to be valid; neither failing its essential purpose, nor being unconscionable. As such, the warranty governs the rights and duties of the parties. Discovery will show that if Aguilera had made a warranty claim, NuWave would have honored it, as NuWave did with other properly presented warranty claims.

## II. NAMED PLAINTIFF AGUILERA MADE NO WARRANTY CLAIM.

This cause of action purports to be nationwide and statewide class action in what is fundamentally a breach of warranty action coupled with consumer protection claims. Plaintiff's First Amended Complaint incorporates nine counts. The first three counts seek relief for breaches of alleged express warranties on behalf of a supposed "nationwide class" and a "Florida subclass." Count IV is an implied warranty Magnuson-Moss claim, on behalf of the same purported classes. Count V is an implied warranty of merchantability claim on behalf of the Florida Subclass pursuant to Florida state law. Counts VI thru VIII are consumer protection claims alleging violations of state consumer protection laws of Illinois and Florida. Count IX purports to be an unjust enrichment claim on behalf of both "classes."

The warranty is as follows:

> **THE MANUFACTURER WARRANTS**
> The infrared cooking system including power head, Dome, Cooking Rack, Liner Pan, Base, and all electrical components are to be free from defects and workmanship (sic) under normal household use, when operated in accordance with the Manufacturer's written instructions provided with each unit for one (1) year from date of purchase. The Manufacturer will provide the necessary parts and labor to repair any part of the infrared cooking system at NuWave, LLC Service Department. After the expiration of the warranty, the cost of the labor and parts will be the sole responsibility of the owner.

5

**THE WARRANTY DOES NOT COVER**
The non-stick coating (if applicable) on any part of the cooking system. The Limited Warranty is voided if repairs are made by an unauthorized dealer or the serial number data plate is removed or defaced. Normal deterioration of finish due to use or exposure is not covered by this Warranty. This Limited Warranty does not cover failure, damages or inadequate performance due to accident, acts of God (such as lightning), fluctuations in electric power, alterations, abuse, misuse, misapplications, corrosive type atmospheres, improper installation, failure to operate in accordance with the Manufacturer's written instructions, abnormal use or commercial use.

**TO OBTAIN SERVICE**
The owner shall have the responsibility to: Pay for all services and parts not covered by the warranty; Prepay the freight to and from the service department for any part or system returned under this warranty; Carefully package the product in adequate padding material to prevent damage in transit. The original container is ideal for this purpose. Include in the package the Owner's name, address, daytime telephone number, a detailed description of the problem, and your "RGA number." (Call 1-877-829-2838) or email help@nuwavenow.com to obtain the RGA (Return Goods Authorization number). Provide the cooking system model & serial number and proof of sate of purchase (a copy of the receipt) when making claims under this warranty.

**MANUFACTURER'S OBLIGATION**
The Manufacturer's obligation under this Limited Warranty is limited to repairing or replacing any part of the infrared cooking system expressly covered by this Limited Warranty which upon examination is found to be defective under normal use. The Limited Warranty is applicable only within the continental United States and only to the original purchaser of the manufacturer's authorized channels of distribution. THE LIMITED WARRANTY MAY NOT BE ALTERED, VARIED OR EXTENDED EXCEPT BY A WRITTEN INSTRUMENT EXECUTED BY THE MANUFACTURER. THE REMEDY OF REPAIR OR REPLACEMENT AS PROVIDED UNDER THIS LIMITED WARRANTY IS EXCLUSIVE. IN NO EVENT SHALL THE MANUFACTURER BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES TO ANY PERSON, WHETHER OR NOT OCCASIONED BY NEGLIGENCE OF THE

> MANUFACTURER, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF USE, COSTS OF SUBSTITUTION, PROPERTY DAMAGE, OR OTHER MONEY LOSS.
>
> Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation exclusions may not apply. This Limited Warranty gives specific legal rights, and there may also be other rights which vary from state to state. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED ABOVE, THE MANUFACTURER MAKES NO WARRANTIES EXPRESSED OR IMPLIED ARISING BY LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE TO ANY OTHER PERSON. READ YOUR OWNER'S MANUAL. IF YOU STILL HAVE ANY QUESTIONS ABOUT OPERATION OR WARRANTY OF THE PRODUCT, PLEASE CONTACT NuWave, LLC.
>
> 1-877-689-2838
> help@nuwavenow.com

The warranty—notably absent from Plaintiff's complaint—is valid and enforceable. The warranty's language makes clear that its remedy is exclusive, and all express and implied warranties arising by law are explicitly disclaimed. There is no choice of law clause. This warranty was available to Plaintiff both before her purchase of any dome, and is materially identical to the warranty that has been in effect for more than a decade. The warranty is contained in the owner's manual, and is available online at numerous locations. Plaintiff had every opportunity to inquire regarding its contents, but does not allege ever having done so.

In her First Amended Complaint, Plaintiff alleges that she purchased or used multiple NuWave ovens, each of which allegedly cracked, from various retailers at various times. (Dkt. # 21, p. 21.) Specifically, she claims that she purchased her first NuWave Oven from Target in or around October 2016. *Id.* at ¶ 51. Plaintiff claims that her mother-in-law was "gifted" a NuWave

oven at some time in 2016, which was "brought into their shared home." *Id.* at ¶ 52. Plaintiff does not allege that she purchased this second dome, and Plaintiff's mother-in-law is not a party.

Plaintiff claims that she purchased a second NuWave oven at Kohls in December 2016, which cracked after "approximately six months of semi-regular use." *Id.* at ¶ 53. Plaintiff alleges that she only contacted NuWave customer service at some point in June or July 2017. *Id.* at ¶ 54. Plaintiff does not allege she ever chose to file a warranty claim, valid or otherwise. Defendant has no record of her ever filing a warranty claim. Instead of availing herself of the exclusive remedy provided in the warranty above, Plaintiff chose to purchase a new oven of her own volition at Kohls in Spring 2017, which she has now owned for one year. *Id.* at ¶ 57. Plaintiff does not allege purchasing any other dome. Given that we are now in late summer of 2018, every oven Plaintiff allegedly purchased is out of warranty.

**III.    THIS CASE SHOULD BE RESOLVED ON SUMMARY JUDGMENT.**

Defendant anticipates this case's resolution on summary judgment, following limited discovery into the merits of Plaintiff's claim. *Cf. Szabo*, 249 F.3d at 676–77 (requiring whatever factual and legal inquiries are necessary under Rule 23). Regardless of whether or not the ovens were defective, if NuWave did not breach its warranty, Plaintiff's claim will fail.

For example, in *Disher v. Tamko Bldg. Products, Inc.*, 2018 WL 905362 (S.D. Ill. Feb. 15, 2018), Southern District of Illinois Judge Yandle granted summary judgment to the Defendant manufacturer as to plaintiff's express warranty claim, consumer protection claims, and unjust enrichment in a case involving allegedly defective shingles. The shingle manufacturer's express limited warranty was valid. *Id.* at *3. The warranty did not fail its essential purpose. *Disher*, 2018 WL 905362, at *3 (citing *Smith v. Navistar Int'l Transp. Corp.*, 714 F.Supp.303, 308 (N.D. Ill. 1989), *aff'd*, 957 F.2d 1439 (7th Cir.1992). Nor was the warranty unconscionable. *Disher*, 2018

8

WL 905362, at *3 (citing *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (2006), *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 266 (2006)). The consumer protection claims failed, requiring more than mere breach of contract. *Disher*, 2018 WL 905362, at *4 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir.2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002))). Similarly, the unjust enrichment "count" failed, because standing on its own an unjust enrichment claim will not justify an action for recovery. *Id.*

Given the considerable similarities between *Disher* and the instant case which we anticipate will manifest in discovery, Defendant anticipates a similar result. There as here, the defendant-manufacturer (1) did not breach its enforceable express limited warranty; (2) was willing and able to comply with the Limited Warranty's terms; and (3) the warranty was neither procedurally nor substantively unconscionable. We expect similar results on the consumer protection claims as well, following discovery with respect to Ms. Aguilera. As such, so as to minimize litigation costs Defendant seeks to avoid putting the class cart before the named plaintiff horse.

**IV.    BIFURCATED DISCOVERY AS PROPOSED IS EFFICIENT, FAIR, AND OVERLAPS WITH CLASS DISCOVERY.**

A court may, "for good cause," limit the scope of discovery or control its sequence to "protect a party or person from … undue burden or expense." Fed. R. Civ. P. 26(c)(1). District courts enjoy broad discretion with respect to decisions relating to discovery disputes, including bifurcating discovery. *See e.g.*, *Harris v. comScore, Inc.*, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012) (citing *Heyman v. Beatrice Co., Inc.*, 1992 WL 245682, at *2 (N.D.Ill. Sept. 23, 1992); *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2004 WL 609326, at *2 (N.D.Ill. March 23, 2004) ("[w]hether to bifurcate discovery is a matter committed to the discretion of the

9

trial court")); *see also* Fed.R.Civ.P. 23 Advisory Committee's Notes (recognizing the appropriateness of bifurcating discovery in certain circumstances).

### A. BURDEN OF POTENTIALLY UNNECESSARY CLASS CERTIFICATION DISCOVERY IS SUBSTANTIAL.

In that Plaintiff intends to seek substantially burdening class discovery in this case, involving claims that are almost certainly not going to be pursued individually in the event that this action is not certified, discovery should be bifurcated. *Christian v. Generation Mortgage Co.*, 2014 WL 4494860, at *9 (N.D. Ill. Sept. 12, 2014) ("It would not be fair or just to bootstrap from an insubstantial prospect that individual claims will be pursued the enormous discovery burden that the plaintiffs seek to impose in this case.").

The scope, both in terms of breadth and cost, of discovery with respect to class issues is considerable. Plaintiff's counsel has advised NuWave's counsel that they even want to pursue all records regarding the standard dome's design, manufacture, and testing. Given the potential to resolve this matter without the parties undertaking such a burden, discovery necessary to achieve such resolution should be prioritized. Especially when considered in relation to the burden of engaging in potentially unnecessary class discovery the prejudice to Plaintiffs is minimal.

### B. A PRELIMINARY INQUIRY INTO PLAINTIFF'S WARRANTY CLAIM'S MERITS WILL NARROW AND CLARIFY CLASS ISSUES.

The Seventh Circuit has found that to determine whether all the class certification elements have been met, a court must frequently make a preliminary inquiry into the merits. *See e.g., Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) ("On issues affecting class certification, however, a court may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must receive evidence and resolve the disputes before deciding whether to certify the class.") (citation omitted); *Szabo*, 249

F.3d at 676 ("And if some of the considerations under Rule 23(b)(3) ... overlap the merits[,] ... then the judge must make a preliminary inquiry into the merits."); *accord Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) ("Because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, the court's rigorous analysis frequently entails some overlap with the merits of the plaintiff's underlying claim.").

In deciding motions to bifurcate merits discovery from class certification discovery, courts consider the following factors: (1) expediency; (2) economy; and (3) severability. *Harris*, 2102 WL 686709, at *3 (internal quotations and citations omitted). The considerations in *Harris* are similar to those here.

First, the expediency factor favors bifurcation, as doing so will aid the court in making a timely determination on any potential class certification motion. *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 893, 933 (N.D. Ill. 2013). Bifurcated discovery will narrow class membership (*e.g.*, whether all purchasers of NuWave ovens which contained the standard dome would be class members, or whether only those purchasers with valid warranty or potentially valid warranty claims could be class members). Bifurcated discovery will narrow and factual and legal issues, such as whether NuWave breached its warranty in its dealings with named plaintiff, or whether the warranty is valid in the first place.

Bifurcated discovery will expedite determinations as to named plaintiff's adequacy to represent the supposed nationwide and Florida classes. As in *Harris*, this should not result in a significant, or any delay. Even if there is a delay in the litigation overall, plaintiff will sustain no unfair prejudice as a result as all discovery undertaken in the first phase is necessarily involved in the rigorous analysis required by Rule 23; while the scope of discovery involved in the second

11

phase would not necessarily be useful in anything more than assessing whether this matter is appropriate for class treatment. *Cf. Szabo*, 249 F.3d at 676–77.

In relation to economic considerations, conducting the initial phase as proposed below will help define appropriate limits for discovery in Phase II by defining the class which "will make it easier to determine the limits of discovery on the merits." *Reid*, 964 F.Supp.2d at 933 (N.D. Ill. 2013). Moreover, economic considerations here are even stronger than in *Harris*, given the prospect of this case's disposition on summary judgment. *Harris*, 2102 WL 686709, at *3.

Finally, the issues related to Plaintiff's warranty claim are preliminary to any class certification issues. The merits of Plaintiff's individual claim speak to her adequacy as representative of any class alleged. Of course, her individual claim in relation to misuse, abuse, violation of the warranty's terms, and the like will shed light of the extent to which individualized issues predominate.

### C. PROPOSED BIFURCATED STRUCTURE FOR PRE-CERTIFICATION DISCOVERY:

Defendant proposes bifurcating discovery into two initial pre-certification phases, staying all Phase II discovery until this Court shall rule on Defendant's Motion for Summary Judgment as shall be filed at the end of Phase I. Phase I would be limited to whether Plaintiff Elizabeth Aguilera made a valid warranty claim; and whether NuWave failed to honor that warranty claim. Assuming the case is not disposed of on summary judgment, Phase II would focus on the appropriateness of class treatment as to the issues of whether the products were defective; whether NuWave knew or reasonably should have known about any alleged defects prior to distribution; whether class member's claims are resolved by the warranty; whether the class members made proper claims under the terms and limitations of the warranty, and etc.

## **CONCLUSION**

WHEREFORE, Defendant respectfully moves that this Honorable Court enter an order granting Defendant's Motion, bifurcating discovery in accord with the proposed structure above, and staying all discovery in the latter phase as described above until after this court's ruling on what will become Defendant's Motion for Summary Judgment.

                                                Respectfully submitted,
                                                **NUWAVE, LLC**

By:     */s/ Peter S. Morse*_____
          Peter S. Morse
          Melvin W. Gaddy
          **MORSE BOLDUC & DINOS, LLC**
          25 East Washington, Suite 750
          Chicago, IL 60601
          (312) 251-2577