**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ELIZABETH AGUILERA, individually and on behalf of herself and all others similarly situated., <br><br>         Plaintiff, <br><br>    vs. <br><br> NuWave, LLC, <br><br>         Defendant. | Case No. 1:18-cv-03550 <br><br> Hon. Edmond Chang <br><br> (Jury Trial Demanded) |

**RESPONSE IN OPPOSITION TO DEFENDANT NUWAVE, LLC'S MOTION TO**
**BIFURCATE DISCOVERY**

890189.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Product Warranty Class Actions Are Regularly Brought and Maintained, and
      Any Alleged Difficulty in Certifying a Product Warranty Class Action Militates
      in Favor of Allowing Plaintiff the Discovery She Needs to Meet Her Burden. ..................1

II.   Plaintiff Has Properly Alleged That She Made a Warranty Claim.....................................3

III.  The Case Will Not Be Resolved Even If the Court Grants Summary Judgment  in
      Favor of Defendant on Plaintiff's Express Warranty Claim..................................................6

IV.   This Case Fails to Meet the Standard for Bifurcated Discovery. ........................................9

      A.    *Economy Does Not Support Bifurcating Discovery*................................................11

      B.    *Expediency Does Not Support Bifurcating Discovery.* ..........................................13

      CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alea v. Wilson Sporting Goods Co.*,
No. 17 C 498, 2017 WL 5152344 (N.D. Ill. Nov. 7, 2017).....................................................3, 4

*Am. Nurses' Ass'n v. Illinois*,
No. 84 C 4451, 1986 U.S. Dist. LEXIS 20447 (N.D. Ill. Sep. 12, 1986).................................9

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ...............................................................................................2

*Christian v. Generation Mortg. Co.*,
No. 12 C 5336, 2014 U.S. Dist. LEXIS 127767 (N.D. Ill. Sep. 12, 2014).............................11

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...............................................................................................7

*Connick v. Suzuki Motor Co., Ltd.*,
675 N.E.2d 584 (Ill. 1996).....................................................................................................7

*Disher v. Tamko Building Products, Inc.*,
No. 14-cv-740-SMY-SCW, 2018 WL 905362 (N.D. Ill. Feb. 15, 2018)........................6, 7, 8

*Duncan Place Owners Ass'n v. Danze, Inc.*,
No. 15 C 01662, 2015 U.S. Dist. LEXIS 122985 (N.D. Ill. Sep. 15, 2015) (Chang, J.) ...........7

*Fuchs v. Menard, Inc.*,
No. 17-cv-01752, 2017 U.S. Dist. LEXIS 160336 (N.D. Ill. Sep. 29, 2017) (Chang, J.)........................................................................................................................................13

*Glob. Quest, LLC v. Horizon Yachts, Inc.*,
849 F.3d 1022 (11th Cir. 2017) ...........................................................................................6

*Harris v. comScore, Inc.*,
No. 11 CV 5807, 2012 U.S. Dist. LEXIS 27665, 2012 WL 686709 (N.D. Ill. Mar. 2, 2012) ........................................................................................................................................11

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
288 F.3d 1012 (7th Cir. 2002) ..........................................................................................2, 3

*In re Groupon Sec. Litig.*,
No. 12 C 2450, 2014 U.S. Dist. LEXIS 26212 (N.D. Ill. Feb. 24, 2014)........................10, 11

*IWOI, LLC v. Monaco Coach Corp.*,
581 F. Supp. 2d 994 (N.D. Ill. 2008) ...................................................................................7

*Maldonado v. Creative Woodworking Concepts, Inc.*,
    796 N.E.2d 662 (Ill. App. 2003) ...................................................................8

*Melton v. Century Arms, Inc.*,
    243 F. Supp. 3d 1290, (S.D. Fla. 2017) .................................................7, 8

*New England Carpenters Health and Welfare Fund v. Abbott Labs.*,
    No. 12 Civ. 1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013)...................6

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .....................................................................3

*Perona v. Volkswagen of Am., Inc.*,
    684 N.E.2d 859 (Ill. App. 1997) ...............................................................8

*Quinn v. Specialized Loan Servicing, LLC*,
    321 F.R.D. 324 (N.D. Ill. 2017).................................................9, 12, 13, 14

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
    739 F.3d 579 (11th Cir. 2013) ...................................................................7

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) .....................................................................2

*Thomas v. City of Peoria*,
    580 F.3d 633 (7th Cir. 2009) .....................................................................9

## STATUTES

15 U.S.C. § 2308(a) ........................................................................................6, 5

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. ....................................12

After declining to move to dismiss the First Amended Class Action Complaint ("FAC"), Defendant NuWave, LLC ("NuWave" or "Defendant"), seeks to bifurcate discovery in this case so it can move for summary judgment on the merits of this case before any class certification discovery is taken. NuWave cites to a number of cases where plaintiffs in breach of warranty class actions failed to meet their evidentiary burden for class certification and uses those cases as justification to completely deny Plaintiff the opportunity to meet her class certification burden by denying her class discovery. Even if this Court was inclined to bifurcate discovery, NuWave's proposed bifurcation schedule gets things backwards by proposing a discovery plan that puts merits discovery before class discovery in contravention of Rule 23(c)(1)'s admonition that "At an early practicable time after a person sues or is sued by a class representative, the court must determine by order whether to certify the action as a class action." NuWave's proposed discovery plan only even makes theoretical sense if this Court takes at face value, NuWave's unsupported allegation that it will win summary judgment on all counts after a brief phase of merits discovery. To do so would drive a stake through the class action device and Rule 23's requirement of certifying a class as early as possible because any defendant could control class discovery and seek summary judgment on an individual basis by simply declaring that they predict a victory on the merits. For these reasons, and as further stated below, Plaintiff, Elizabeth Aguilera, on behalf of herself and all others similarly situated, files this response in opposition to Defendant NuWave, LLC's Motion to Bifurcate Discovery (the "Motion"), and states:

I.    *Product Warranty Class Actions Are Regularly Brought and Maintained, and Any Alleged Difficulty in Certifying a Product Warranty Class Action Militates in Favor of Allowing Plaintiff the Discovery She Needs to Meet Her Burden.*

In a section more closely resembling a response in opposition to a motion for class certification than a discovery motion, NuWave cites a number of cases in which the Seventh Circuit—and one Sixth Circuit panel—has highlighted the difficulties of certifying a product warranty class action and either reversed a district court's class certification order or affirmed a district court's order denying class certification. NuWave then concludes without elaboration, "[w]e believe discovery will show that Elizabeth Aguilera has no valid warranty claim against

NuWave and therefore could not be an adequate class representative for any purported class identified in the complaint. We further believe that such discovery will reveal that class treatment for this matter is impermissible." In making these statements, NuWave betrays that its true desire is not to limit all class discovery, just the discovery that supports Plaintiff's case. NuWave wants this Court to allow discovery on adequacy, stating "such discovery will reveal that class treatment for this matter is impermissible." NuWave is essentially asking this Court to allow just enough discovery to defeat class certification, but not enough for Plaintiff to put on a sufficient showing to support a motion for class certification. As will be explained more thoroughly below, if the merits discovery is so inextricably intertwined with the class discovery, this Court should allow both class and merits discovery to proceed. Because a "court should assess whether the class allegations are 'satisf[ied] through evidentiary proof.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432 (2013)), denial of class discovery based on Defendant's speculation that this case will not be certified is improper.

Contrary to NuWave's arguments, product warranty cases can and do proceed as class actions. The issue will generally turn upon whether there is a single, central, common issue of liability. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("There is a single, central, common issue of liability: whether the Sears washing machine was defective."). Complications arising from minor design changes to the product and separate state warranty laws can be handled by the creation of subclasses. *Id.* at 802. Even without the benefit of discovery, this case appears more analogous to *Butler* because of the single, central, common issue of whether the NuWave oven included a dome that was overly susceptible to failure under normal use, than cases cited by Defendant such as *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1015–16 (7th Cir. 2002) which sought to aggregate millions of claims on account of multiple products manufactured and sold across more than ten years, most of which were claims by customers whose tires did not fail, because those class members who suffered personal injury or death were sure to opt out and litigate independently. *Id.* at 1016.

This case is also unlike *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006), which contained a reliance element as well as the potential untold members of the proposed class who were aware that the fountain Diet Coke contained saccharin and bought it anyways, thus leaving them with no claim for damages. Unlike *Oshana*, NuWave cannot plausibly argue that members of the potential class here were satisfied with the purchase of a NuWave oven that failed under normal use. However, this Court need not even reach this analysis because all the cases Defendant relies upon are appeals of orders either granting or denying motions to certify classes, presumably ***after*** full class discovery. The mere fact that some courts have stated that product warranty class actions are disfavored does not warrant the denial of discovery and the Plaintiff's opportunity to make the factual showing that this is one of the cases where class treatment is appropriate. Thus, this Court should reject Defendant's argument that discovery should be limited to merits discovery because this is a product warranty case.

## II.     *Plaintiff Has Properly Alleged That She Made a Warranty Claim.*

In support of its argument that discovery should be bifurcated because Plaintiff "could not be an adequate class representative," Defendant alleges that Plaintiff never made a warranty claim. As a preliminary matter, whether or not Plaintiff properly invoked the warranty is a factual question which will require a detailed analysis that is wholly inappropriate at this early stage of the proceedings, and Defendant's arguments are an improper attempt to challenge the sufficiency of Plaintiff's allegations without filing a motion to dismiss. Additionally, Defendant's "adequacy" concerns are really standing arguments in disguise, as Defendant essentially claims that Plaintiff had no right to file suit in the first place given her failure to trigger the warranty. Significantly, courts have cautioned that when a plaintiff brings a putative class action and the defendant argues that the plaintiff lacks "standing" to represent members of the putative class, the court must be "mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing." *Alea v. Wilson Sporting Goods Co.*, No. 17 C 498, 2017 WL 5152344, at *6 (N.D. Ill. Nov. 7, 2017) (citing *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).

In any event, Plaintiff has clearly pled facts sufficient to show that she did everything she was required to do to activate NuWave's warranty. Plaintiff alleges that, after a previous NuWave oven her family owned cracked and became unusable, she purchased a new one in or around December 2016. FAC ¶ 53. After approximately six months of semi-regular use, this oven cracked in several places. *Id.* Shortly thereafter, while this oven was still covered by NuWave's one-year manufacturer's warranty, Plaintiff called NuWave's customer service hotline. *Id.* at ¶ 54. The customer service representative she spoke to informed her that the "free" clear replacement Standard Dome was out of stock, and that even when it was back in stock, she would have to pay a significant amount in shipping and handling costs to have it sent to her. *Id.* The customer service representative told her that, as an alternative, she could to upgrade to the stronger Power Dome by paying for the dome itself as well as shipping and handling. *Id.* at ¶ 55. Plaintiff determined that neither of these options were worth the cost, especially when, at certain retailers, she could purchase a whole new oven for approximately $100.00, which she ultimately did in Spring 2017. This oven also cracked. *Id.* at ¶ 56-57. These allegations are more than sufficient for the purposes of stating a claim for breach of express warranty.

Defendant seems to imply that Plaintiff did not actually avail herself of the warranty without describing what steps, exactly, she should have taken but did not. Instead, Defendant simply includes the text of the warranty, which in fact supports Plaintiff's argument, not Defendant's. The warranty does not state that the owner must return a broken part to the company in order to obtain a replacement. It only states that, "for any part or system returned under this warranty," the owner shall be responsible for shipping costs, and then goes on to describe how the returned part should be packaged. But Plaintiff did not seek to return her dome to NuWave for repair. What she sought, what she was entitled to under the warranty, and what she explicitly asked for when she called the company's customer service hotline, was a replacement dome. NuWave's own website states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair **or replace** the NuWave Oven during

this time. After the expiration of the warranty, the cost to repair or replace the NuWave Oven will be the responsibility of the owner. **If you have any questions or comments, please contact our Customer Service Department** at 1-877-689-2838 between the hours of 7:30am and 4:30pm CST or email at help@nuwavenow.com.[1]

(Emphasis added). This is precisely what Plaintiff did. She called the customer service hotline, and was told that, while her oven was still under warranty, no replacements were available, and her only options were to (a) wait some unspecified amount of time for the Standard Dome to come back in stock and then pay a significant amount in shipping and handling costs, or (b) avoid the wait by paying a significant amount for an upgraded Power Dome, plus shipping and handling. The customer service representative Plaintiff spoke to did not tell her that she would have to register her cracked dome, send it to the company, or take any other action in order to obtain a replacement. Indeed, doing so would have been completely futile, given that no replacements were available. The customer service representative also did not tell Plaintiff that she could have her dome repaired or outline any steps she should take to do so. In fact, it seems highly implausible that a cracked plastic dome *could* be repaired in a way that allowed it to be safely used in the future. Plaintiff did what any reasonable consumer would have done under the circumstances, and what Defendant directed her to do if she had any questions about the warranty – she contacted the company directly. When she did so, she was explicitly told that the warranty could not be honored.

In addition to trying to undermine Plaintiff's express warranty claims, Defendant seeks to dispose of Plaintiff's implied warranty claims by simply stating that "the warranty's language makes clear that its remedy is exclusive, and all express and implied warranties arising by law are explicitly disclaimed." Again, whether this disclaimer is valid is a question that cannot be resolved on a motion to bifurcate discovery. It is worth noting, however, that Section 2308(a) of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2308(a), prohibits a seller from

---

[1] FAC ¶ 45, *NuWave Oven Terms and Conditions*, NuWave, https://www.nuwaveoven.com/resource/html/terms_condition.asp (last visited August 7, 2018).

disclaiming implied warranties if an express warranty, including a limited warranty, is given. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017).

It is the burden of the party resisting discovery and proposing bifurcation to show that good cause exists to limit discovery. *New England Carpenters Health and Welfare Fund v. Abbott Labs.*, No. 12 Civ. 1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013). Here, Defendant has failed to do even the bare minimum of alleging how Plaintiff failed to comply with the terms of the warranty. By contrast, Plaintiff has provided ample factual support for her claim that she tried to avail herself of NuWave's warranty but NuWave prevented her from doing so.

### III.    The Case Will Not Be Resolved Even If the Court Grants Summary Judgment in Favor of Defendant on Plaintiff's Express Warranty Claim.

Defendant relies exclusively on *Disher v. Tamko Building Products, Inc.*, No. 14-cv-740-SMY-SCW, 2018 WL 905362 (N.D. Ill. Feb. 15, 2018), in support of its mistaken contention that all of Plaintiff's claims will fail as a matter of law if she does not prevail on her breach of express warranty claim. Motion at 8.

Not so. *Disher* says no such thing and does not stand for any similar proposition.[2] Rather, while the *Disher* Court did grant summary judgment in favor of the defendant for each claim brought by the plaintiff, it did so analyzing each claim independently. The express warranty claim failed because the court found the defendant complied with the express terms of the limited warranty, and based on the facts of that case, it was fair to enforce the warranty according to its terms. *Disher*, 2018 WL 905362, at *3-4. The negligence and strict liability claims failed because the economic loss doctrine applied, and there was no evidence of property damage. *Id.* at *4. The consumer fraud and deceptive business practices claims failed because the plaintiff did not present evidence that he was deceived by statements or omissions made by the defendant. *Id.* at *5. And the unjust enrichment claim failed because the plaintiff did not present

---

[2] *Disher* also says nothing about the propriety of bifurcating discovery.

evidence of fraudulent dealings. *Id.* The court addressed each of these claims separately, and each was dismissed under a *separate and distinct analysis* based on the evidentiary record applicable to each claim.[3] In short, *Disher* stands for the unremarkable proposition that if a plaintiff does not collect the evidence to support his claims, those claims will be dismissed on summary judgment.

Courts in product defect cases routinely uphold fewer than all of the plaintiff's claims, and in doing so, they make clear that these claims have separate elements and do not all rise and fall together (or on the strength of the warranty claim alone, as Defendant suggests). *See, e.g.*, *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1302-07 (S.D. Fla. 2017) (dismissing Florida tort claims, implied warranty claims, and Magnuson-Moss claims; but upholding Arizona tort claims, Illinois tort claims involving fraud or negligent misrepresentation, Florida consumer fraud claims, and unjust enrichment claims under Arizona, Illinois, and Florida law); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1001-04 (N.D. Ill. 2008) (upholding express warranty and consumer fraud claims, but dismissing implied warranty claim against manufacturer of defective RV); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, (Ill. 1996) (dismissing warranty and common law fraud claims, but upholding consumer fraud claims based

---

[3] The sole exception is the unjust enrichment claim, which the court determined was not a standalone cause of action under Illinois law. *Disher*, 2018 WL 905362, at *5 (citing *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 2009)). However, that is questionable under Illinois law. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (stating that "[t]he Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action," but discussing the contrary language in *Martis* and declining to decide the issue). Further, there is no question that unjust enrichment is a standalone cause of action under Florida law. *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) ("Florida courts have long recognized a cause of action for unjust enrichment to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." (quotation omitted)). That choice of law question has not been raised by Defendant and is better addressed at class certification. *See, e.g.*, *Duncan Place Owners Ass'n v. Danze, Inc.*, No. 15 C 01662, 2015 U.S. Dist. LEXIS 122985, at *18-19 n.4 (N.D. Ill. Sep. 15, 2015) (Chang, J.) (declining to make early choice-of-law determination before class certification motions).

on Suzuki's statements to Car & Driver magazine and based on material omissions by Suzuki); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864-67 (Ill. App. 1997) (dismissing state and federal warranty claims, but upholding consumer fraud claims based on a material omission).

Plaintiff here pleads four basic types of claims: breach of express warranty (Counts I-III), breach of implied warranty of merchantability (Counts IV-V), violations of consumer fraud and deceptive trade practices statutes (Counts VI-VIII), and common law unjust enrichment (Count IX). FAC ¶¶ 62-145. These amount to four conceptually distinct claims, each requiring different proof. Express warranty claims require a plaintiff to prove a product defect, which the manufacturer failed to repair or replace according to the warranty. *Disher*, 2018 WL 905362, at *2. Implied warranty claims require a plaintiff to prove that they purchased goods from a merchant that were not fit for their ordinary purposes. *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. 2003). Those allegations—and the facts that ultimately must be proven—focus on whether a product is fit for the use for which it is sold. By contrast, consumer fraud and deceptive trade practices claims center on untrue and deceptive statements or omissions. *Disher*, 2018 WL 905362, at *4-5. Finally, unjust enrichment claims focus on whether the plaintiff has conferred a benefit on the defendant, such that it would be inequitable for the defendant to retain it under the circumstances. *Melton*, 243 F. Supp. 3d at 1306.

In this case, Defendant does not challenge the sufficiency of Plaintiff's allegations, since it has not filed a Rule 12 motion to dismiss. It is clear that Plaintiff has pled sufficient facts to separately establish these different claims. And at summary judgment and class certification, those claims will require different proof and will likely be supported by different facts. Accordingly, there is no basis to bifurcate discovery as even if Defendant is correct that the breach of warranty claim will not survive summary judgment, the disposition of Plaintiff's breach of warranty claims is not dispositive of her remaining claims under which liability can be independently examined.

## IV.     This Case Fails to Meet the Standard for Bifurcated Discovery.

While a court has broad discretion to limit or control the sequence of discovery, NuWave's mere assertion that it will win the case on summary judgment does not meet the standard for bifurcation. As stated above, even if this Court granted summary judgment to NuWave on the breach of warranty counts, the remaining counts are not symbiotic and would not fall with the breach of warranty counts. The fact that NuWave makes no argument as to why the remaining counts will not proceed as a class action if summary judgment is granted on the warranty counts is reason enough to deny the motion. *See supra*, Section III. However, analysis of the relevant factors a court considers when ruling on a motion to bifurcate also shows that the motion is not well-founded.

In seeking to stay all class certification related discovery until after this Court disposes of a motion for summary judgment, NuWave is asking this Court to depart from the well-settled law "that the issue of certification should generally be resolved prior to addressing the merits of the plaintiff's claims." *Quinn v. Specialized Loan Servicing, LLC*, 321 F.R.D. 324, 326 (N.D. Ill. 2017) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015) ("[T]he default rule is that a court may not resolve merits questions at the class certification stage. 'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.")); *Thomas v. City of Peoria*, 580 F.3d 633, 635 (7th Cir. 2009) ("First ruling on the merits of the federal claims, and then denying class certification on the basis of that ruling, puts the cart before the horse, as we have emphasized in previous cases."); Joseph M. McLaughlin, McLaughlin on Class Actions § 3:12 (13th ed. 2016) ("It is axiomatic that at the class certification stage a court may not resolve substantial, disputed factual issues concerning the merits unless those issues also are relevant to a Rule 23 determination."); *see also Am. Nurses' Ass'n v. Illinois*, No. 84 C 4451, 1986 U.S. Dist. LEXIS 20447, at *8 (N.D. Ill. Sep. 12, 1986) ("Only in exceptional circumstances, such as obvious lack of merit in the claim for relief, should a decision on the

merits be made before scheduling discovery on the class action issue." (citing The Manuel for Complex Litigation § 1.40 (1977))).

"In order to establish good cause [to bifurcate discovery], 'courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory state-ments.'" *In re Groupon Sec. Litig.*, No. 12 C 2450, 2014 U.S. Dist. LEXIS 26212, at *5 (N.D. Ill. Feb. 24, 2014) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2035, at 157-58 (3d ed. 2010)). Defendant has failed to meet this first burden, offering nothing more than speculation that it will win this case on summary judgment or that Plaintiff will not be an adequate class representative.

> When ruling on motions to bifurcate class certification and merits discovery, courts consider the following factors:
>
>> (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification mo-tion; (2) economy, meaning the potential impact a grant or denial of certification would have upon the pending litigation and whether the definition of the class would help determine the limits of discovery on the merits; and (3) severability, meaning whether class certification and merits issues are closely enmeshed.

*Id*. at *5-6 (quoting *Harris v. comScore, Inc.*, No. 11 CV 5807, 2012 U.S. Dist. LEXIS 27665, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012)). "The Manual for Complex Litigation cautions that '[d]iscovery relevant only to the merits delays the certification deci-sion and may ultimately be unnecessary." *In re Groupon Sec. Litig.*, 2014 U.S. Dist. LEXIS 26212, at *6 (quoting Manual for Complex Litigation, Fourth, § 21.14.).

Notably, Defendant only analyzes two of the factors, expediency and economy and omits any analysis about the severability factor. This is likely because, as Defendant has tacitly admitted throughout its motion, class and merits discovery are inextricably intertwined. On numerous occasions thought the Motion to Bifurcate, Defendant has stated that the limited discovery it seeks to allow will weigh on class certification issues such as adequacy and predominance. Furthermore, Defendant's arguments on the two factors it does analyze are not

well founded either.

### A. *Economy Does Not Support Bifurcating Discovery.*

Contrary to Defendant's arguments, economy does not support bifurcating discovery, and even if it did, it would support putting class discovery before merits discovery. In fact, the case Defendants cites stands for the opposite proposition it is cited for—the "unlikelihood that plaintiffs would pursue individual claims *weighs in favor of requiring class discovery to precede merits discovery*." *Christian v. Generation Mortg. Co.*, No. 12 C 5336, 2014 U.S. Dist. LEXIS 127767, at *29 (N.D. Ill. Sep. 12, 2014) (emphasis added) (citing *Harris v. comScore*, *Inc.*, 2012 U.S. Dist. LEXIS 27665, 12 WL 686709, at *4 (N.D. Ill. Mar. 2, 2012). Defendant argues without any factual support that the claims in this case "are almost certainly not going to be pursued individually in the event that this action is not certified." Motion at 10. As explained by Defendant's own case, this actually weighs in favor of allowing class discovery to proceed. Defendant's argument that class discovery should not proceed because the case will not proceed if a class is not certified is circular and should be rejected.

Furthermore, Defendant's argument that the claims will not proceed if a class is not certified is pure speculation. Even if a class is not certified, this case could proceed as an individual action. While Defendant does not state why the case would not proceed if not certified, there is nothing in the record to support Defendant's speculation that Plaintiff would not proceed on her individual claims if a class is not certified, and this Court should not accept Defendant's speculation to the contrary.

Additionally, as explained by several Courts, "bifurcation can actually increase the costs of litigation because of disputes over what constitutes merits and what constitutes class discovery." *In re Groupon Sec. Litig.*, 2014 U.S. Dist. LEXIS 26212, at *14. Given that Defendant has stated that merits discovery will help resolve issues that are actually class certification issues including adequacy and predominance, it is highly likely that bifurcating discovery would just cause numerous discovery disputes over what constitutes class discovery and what constitutes merits discovery. For example, the Illinois and Florida consumer fraud

claims are grounded in the fact that NuWave engaged in unfair and deceptive marketing when it advertised the Pro Model Ovens as "high quality," "durable," "safe," and "shatter resistant" when in fact they are not. Inquiry into whether or not the dome was defective and NuWave falsely marketed a defective dome as "high quality," "durable," "safe," and "shatter resistant" will necessarily include discovery of records concerning the dome's design, manufacture, and testing whether brought as an individual claim or as a class action. This is just one example of how bifurcating discovery will lead to further disputes over what constitutes the fair scope of discovery, increasing rather than decreasing expenses. Furthermore, unless this Court accepts that it will grant summary judgment on all counts as a foregone conclusion--which it should not do because at "[the precertification] stage, the court should not decide or even attempt to predict the weight or outcome of the underlying claims and defenses"--bifurcating discovery will exponentially increase costs when the parties engage in a second round of discovery on similar topics on a class-wide basis. *Quinn*, 321 F.R.D. at 326 (quoting Manual for Complex Litigation § 21.14).

Finally, in a case that is nearly directly on point, a court in this district already denied a motion to bifurcate discovery and place merits discovery before class discovery because the defendant simply argued that the plaintiff's claims were weak on the merits and that the case should be resolved on summary judgment. *Quinn*, 321 F.R.D. at 324. In *Quinn*, the plaintiffs brought a putative class action against their loan servicer for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. *Id*. at 325. The servicer argued that it had definitive proof that the actions complained of were not a violation of the FDCPA and that it had definitive evidence that it was expressly authorized by the plaintiff's counsel to communicate with the plaintiff directly, thereby defeating one of their other theories of liability. *Id*. at 326. The servicer sought to conduct limited discovery into these issues, arguing that "it will be able to obtain summary judgment on plaintiffs' individual claims and make it unnecessary to engage in any further merits or class discovery." *Id*. Essentially the servicer in *Quinn*, made the exact same argument that NuWave makes here. These arguments were rejected because Rule 23

requires class certification to be determined as early as practicable and due to the general rule that class certification should be resolved before the merits. *Id*. The *Quinn* court recognized that "where merits and certification issues are inextricably linked, a preliminary inquiry into the merits may be necessary." *Id*. However, the court also recognized the limiting principle that "[m]erits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. (alteration in original) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195 (2013).

Indeed, there are scenarios where a delay of class discovery is warranted for economic reasons. Generally, this is in the context of a motion brought under Rule 12(b), because if a complaint cannot survive a Rule 12(b) motion, it makes little economic sense to dive deep into intense discovery. But once past the initial dispositive motion stage, class discovery should not be stayed in favor of merits discovery because it would violate Rule 23's requirements to resolve class certification issues as soon as practicable and before the merits. *Quinn*., 321 F.R.D. at 327; accord *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 U.S. Dist. LEXIS 160336, at *2 n.2 (N.D. Ill. Sep. 29, 2017) (Chang, J.). Because NuWave chose not to file a motion to dismiss, tacitly admitting that Plaintiff adequately plead its claims, this Court should not grant NuWave's request to limit discovery to merits questions just because NuWave believes it has strong defenses. To do so would contravene the Supreme Court's precedent that this Court should not resolve into the merits questions at the pre-certification stage. Thus, this Court should deny the Motion to Bifurcate.

### B.   *Expediency Does Not Support Bifurcating Discovery.*

On the expediency prong, Defendant's argument for bifurcated discovery is actually an argument against bifurcated discovery, or at least conducting class discovery first if discovery were to be bifurcated. Defendant argues:

> First, the expediency factor favors bifurcation, as doing so will aid the court in making a timely determination on any potential class certification motion. Bifurcated discovery will narrow class membership (e.g., whether all purchasers of NuWave ovens which contained the standard dome would be class members,

> or whether only those purchasers with valid warranty or potentially valid
> warranty claims could be class members).

(citations omitted). However, recognizing the evidentiary inquiry inherent in a motion for class certification, Defendant's argument supports allowing class discovery to go forward to allow this Court to make the required inquiry on a motion for class certification. Class discovery, not merits discovery into the Plaintiff's individual experience is what is necessary to resolve these class issues. Defendant fails to explain how this Court will resolve class certification issues without allowing class discovery. Thus, Defendant's argument for bifurcation is unpersuasive and should be rejected.

As explained by the *Quinn* court, the deeper problem with the discovery plan proposed by NuWave "is that it has no limiting principle. Taken to its logical conclusion, the logic of" NuWave's argument "suggests that courts should routinely allow precertification merits discovery, given the possibility that it might render certification issues moot. *Quinn*, 321 F.R.D. at 327. This would completely upend the Supreme Court and Seventh Circuit precedent that "the general rule [is] that the merits are to be addressed only after the issue of certification has been addressed. *Id.* (citing *Amgen*, 568 U.S. at 466; *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015); *Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013)). Similarly, Defendant's argument has no limiting principle and Defendant talks out of both sides of its mouth when it recognizes the evidentiary standard for class certification as well as summary judgment, but asks this Court to disregard this evidentiary burden and deny discovery necessary to develop the factual record for these class certification issues.

## CONCLUSION

Because class certification should precede a merits determination, and for the other foregoing reasons, this Court should deny the Motion to Bifurcate Discovery.

DATED: August 7, 2018            **PEARSON, SIMON & WARSHAW, LLP**


           By:         */s/ Melissa S. Weiner*
                     MELISSA S. WEINER

Melissa S. Weiner (*Pro Hac Vice*)
   mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

Susan M. Coler (ARDC No. 6201012)
   coler@halunenlaw.com
**HALUNEN LAW**
415 North LaSalle Street, Suite 502
Chicago, IL 60654
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

Hassan A. Zavareei
   hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Jeffrey M. Ostrow
   ostrow@kolawyers.com
Jonathan Streisfeld
   streisfeld@kolawyers.com
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT**
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I certify that on August 7, 2018, all counsel of record were served with a copy of the foregoing via the Court's CM/ECF System.

By: _____ */s Melissa S. Weiner*
MELISSA S. WEINER

*Attorneys for Plaintiff Elizabeth Aguilera and the Proposed Class*