## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

ELIZABETH AGUILERA, CRYSTAL
RUSSELL, TERESA DISALVO, EMMA
MENDOZA, and SHAUNTIQUEA FOSTON,
individually and on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

      v.

NuWave, LLC,

                    Defendant.

Case No. 1:18-cv-3550

(JURY TRIAL DEMANDED)

## SECOND AMENDED CLASS ACTION COMPLAINT

1.     Plaintiffs Elizabeth Aguilera, Crystal Russell, Teresa DiSalvo, Emma Mendoza, and

Shauntiquea Foston ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this

Class Action Complaint against Defendant NuWave, LLC ("NuWave" or "Defendant") and in

support allege as follows:

## NATURE OF THIS ACTION

2.     NuWave, LLC, founded in 1993, is a manufacturer and retailer of kitchen

appliances. NuWave's flagship product is the NuWave Oven, a countertop oven that uses a

combination of infrared, conduction, and convection heat to cook food.[1] NuWave claims that its

ovens are unique because of their "high-quality plastic dome[s] … selected for their high

durability."[2] By NuWave's own estimation, "over 6 million NuWave Ovens have been sold" since

the product first launched.[3]

3.     NuWave markets and sells two of its four current NuWave Oven models, the

---

[1] *See Features*, NuWave, http://www.nuwaveoven.com/common/NW52T08/features.asp (last visited
Mar. 1, 2019).
[2] *See Frequently Asked Questions*, NuWave, http://www.nuwaveoven.com/b239/asp/faq.asp (last
visited Mar. 1, 2019).
[3] *About Us*, Nuwave, https://nuwavenow.com/AboutUs (last visited Mar. 1, 2019).

NuWave Oven Pro and the NuWave Oven Pro Plus ("Ovens"),[4] with clear polycarbonate domes ("Standard Domes") that are susceptible to cracking after minimal usage. NuWave also markets and sells two of its four current NuWave Oven models, the NuWave Oven Pro Plus and the NuWave Oven Elite ("Ovens"),[5] with amber-colored polysulfone domes ("Power Domes") that are also susceptible to cracking after minimal usage. Both the Standard Domes and Power Domes are collectively referred to as "Domes."

4.      Accordingly, NuWave sells products into the stream of commerce that do not perform as promised and suffer from a uniform defect.

5.      Notably, this defect is the subject of hundreds of online complaints, many of which NuWave has publicly responded to.[6] Yet, despite NuWave's knowledge of the defect, it continues to falsely advertise the Ovens as being "high-quality,"[7] "dishwasher safe,"[8] and "durable [and] shatter resistant."[9]

6.      These marketing representations constitute express warranties, as does the following statement in the owner's manual NuWave provides to each purchaser of the Ovens:

---

[4] *See Current NuWave Models*, NuWave,
http://www.nuwaveoven.com/common/NW52T08/features.asp (last visited Mar. 1, 2019).
[5] *See Current NuWave Models*, NuWave,
http://www.nuwaveoven.com/common/NW52T08/features.asp (last visited Mar. 1, 2019).
[6] *See, e.g., NuWave Oven Reviews and Complaints*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-oven-nuwave-dome-review-from-orlando-florida-20150617652076.html; https://nuwave-oven.pissedconsumer.com/nuwave-oven-nuwave-dome-20150914699410.html; https://nuwave-oven.pissedconsumer.com/nuwave-oven-nuwave-dome-review-from-bellevue-washington-20150414621901.html; https://nuwave-oven.pissedconsumer.com/nuwave-oven-nuwave-dome-review-from-port-lincoln-south-australia-20150627656993.html; https://nuwave-oven.pissedconsumer.com/nuwave-dome-issues-and-nuwave-wants-me-to-pay-65-dollars-for-a-new-improved-dome-20150612649201.html (all last visited Mar. 1, 2019).
[7]     *See Frequently Asked Questions*, NuWave, http://www.nuwaveoven.com/b239/asp/faq.asp (last visited Mar. 1, 2019).
[8] *Id.*
[9] *See NuWave Oven Product Pages*, Bed Bath and Beyond,
https://www.bedbathandbeyond.com/store/product/nuwave-oven-pro-in-black/1043094011?Keyword=nuwave oven pro; J.C. Penny,
https://www.jcpenney.com/p/nuwave-oven-pro-20631/pp5005430969?pTmplType=regular; Walmart, https://www.walmart.com/ip/NuWave-20634-Oven-Pro-Plus-Red/338006618 (all last visited Mar. 1, 2019).

**The infrared cooking system including** power head, **dome**, cooking rack, liner pan, base, and all electrical components **are to be free from defects and [sic] workmanship** under normal household use, when operated in accordance with the Manufacturer's written instructions provided with each unit for one (1) year from date of purchase.[10]

7.      By selling its Ovens with a known defect that causes them to crack in less than a year, NuWave violates these express warranties.

8.      NuWave also fails to live up to its promises when the defect manifests itself. NuWave specifically warrants that it will provide replacement parts or repairs for its Ovens within the one-year warranty period:

The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair or replace the NuWave Oven during this time.[11]

However, this offer is illusory. The Standard Dome is frequently out of stock, and even when it is in stock, consumers must pay shipping and handling costs almost equivalent to the price of the product in order to obtain one.

9.      In fact, instead of providing consumers with free, non-defective replacements for their cracked and unusable Standard Domes, NuWave has a standard practice of manipulating consumers into paying to upgrade to NuWave's newer, more expensive Power Dome, an amber-colored dome which is advertised as being "virtually indestructible."[12] NuWave specifically tells consumers who complain about the defective Standard Domes that they should pay extra to upgrade to the Power Dome in order to avoid future issues.[13] Notably, despite the company's

---

[10] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC, http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019) (emphasis added).
[11] *NuWave Oven Terms and Conditions*, NuWave, https://www.nuwaveoven.com/resource/html/terms_condition.asp (last visited Mar. 1, 2019).
[12] The Power Dome currently retails for $48.90 on NuWave's website, ($34.95 plus approximately $13.95 shipping and handling). Some consumers have reported that the company has offered to send them the new dome for a "warranty price" of $20.00 plus shipping and handling. In any event, consumers should not have to pay anything to replace their domes because of a defect NuWave promised it would remedy.
[13] *See, e.g., NuWave Oven Consumer Complaint*, Pissed Consumer https://nuwave-oven.pissedconsumer.com/nuwave-oven-dome-20150914699410.html (last visited Mar. 1, 2019) (in response to a consumer complaint regarding a cracked oven dome, Jessica C, a verified NuWave

claims that the Power Dome is "shatter-resistant" and "uses similar technology applied in the manufacturing of jumbo jet windshields and NASA spaceships,"[14] it is also susceptible to the same or substantially similar cracking.[15]

10.     Consumers who, despite NuWave's unfair and deceptive tactics described above, are able to obtain a replacement Standard Dome or Power Dome find that it suffers from the same defect as the one they originally purchased. This is also true as to consumers who have Ovens originally equipped with Power Domes. Many consumers, including Plaintiffs Elizabeth Aguilera and Teresa DiSalvo have gone through the trouble of replacing their defective Domes multiple times, only to experience the same cracking each time.

11.     Plaintiffs and consumers like them have all experienced the same defect—failure of the Domes via cracking or shattering—after using the Ovens for a brief period. Despite numerous consumer complaints, however, NuWave has not publicly acknowledged the defect or attempted to fix it. Further, consumers cannot take advantage of NuWave's one-year warranty as detailed herein.

12.     NuWave continues to promote and market its faulty Ovens and continues to profit handsomely from their sale, as well as from the sale of its Power Domes, which consumers are urged to buy when their Standard Domes fail or they complain about the defect. NuWave's conduct is deceptive and harmful to consumers.

13.     The Domes are a material feature of the Ovens. Without intact Domes, the Ovens are essentially worthless. Not only are Ovens with cracked Domes incapable of properly retaining heat, they are also not safe to use. Specifically, the cracked Domes may emit heat, steam, or hot oil that can cause burns or other injuries. The cracked Domes also pose a fire hazard. Indeed, the first

---

representative writes: "Nuwave continues to strive to update and refine our products to be more modern and efficient. That being said we do now offer our new Power Dome … The virtually-indestructible Power Dome is built to withstand extreme temperatures … the Power Dome uses similar technology applied in the manufacturing of jumbo jet windshields and NASA spaceships.")
[14] *Id.*
[15] *See, e.g., NuWave Oven Consumer Complaints and Reviews*, Pissed Consumer https://nuwave-oven.pissedconsumer.com/power-dome-20130330396828.html; https://nuwave-oven.pissedconsumer.com/elite-model-w-super-dome-cracked-after-only-11-mos-despite-3-yr-warranty-20140918536002.html (last visited Mar. 1, 2019).

page of the NuWave Oven Pro Plus owner's manual instructs consumers to "never operate this appliance if it has … [been] damaged."[16]

14.     Reasonable consumers expect that the Ovens, which retail for up to $209.99 on NuWave's website plus shipping and handling costs, will continue to be functional and safe after minimal use. And reasonable consumers, including Plaintiff, would not have purchased the Ovens, or would have paid less for them, had they known the ovens suffer from a defect that causes their domes to crack.

15.     As a result of the defect in the Ovens, which is well-documented and known to Defendant, Plaintiffs and the proposed class have suffered damages.

## THE PARTIES

16.     Plaintiff Elizabeth Aguilera is and was at all relevant times a citizen of the State of Florida, residing in the City of Cape Coral, Florida.

17.     Plaintiff Crystal Russell is and was at all relevant times a citizen of West Virginia, residing in the City of East Lyn, West Virginia.

18.     Plaintiff Teresa DiSalvo is and was at all relevant times a citizen of Ohio, residing in the City of Liberty Township, Ohio.

19.     Plaintiff Emma Mendoza is and was at all relevant times a citizen of Texas, residing in the City of La Porte, Texas.

20.     Plaintiff Shauntiquea Foston is and was at all relevant times a citizen on Colorado, residing in the City of Aurora, Colorado.

21.     Defendant NuWave, LLC is an Illinois limited liability company with its headquarters and principal place of business in Libertyville, Illinois. NuWave designs, manufactures, and markets a range of kitchen appliances, including various models of the NuWave Oven, the NuWave Precision Induction Cooktop, the NuWave Brio Digital Air Fryer, and the NuWave Nutri-Pot Digital Pressure Cooker. NuWave sells its products globally through its website, as well as

---

[16] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC, http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019).

through various retailers, including Walmart, Macy's, Kohl's, Bed Bath and Beyond, Home Depot, Sears, Best Buy, and Target.

## JURISDICTION AND VENUE

22.     This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this action is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000, and there are members of the class who are citizens of a different state than the Defendant NuWave. [17]

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because NuWave is a resident of Libertyville, Illinois which is located in this District.

## CLASS ACTION ALLEGATIONS

24.     Plaintiffs bring this action on behalf of themselves and the Nationwide class defined as follows:

> All persons residing in the United States who purchased the NuWave Standard Dome and/or Power Dome and/or any NuWave Oven Model containing the Standard or Power Dome, including the NuWave Oven Pro, the NuWave Oven Pro Plus, and the NuWave Oven Elite, primarily for personal, family or household purposes, and not for resale (the "Nationwide Class").

---

[17] With respect to determining the citizenship of limited liability companies and establishing the diversity of the parties in cases brought under the Class Action Fairness Act, 28 U.S.C.A. § 1332(d)(10) provides that "for purposes of this section . . . an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Although the statute refers generally to "unincorporated associations," most courts, including the U.S. District Courts for the Southern and Central Districts of Illinois and a number of Circuit Courts of Appeal have held that limited liability companies such as NuWave fall within that definition. *See, e.g.*, *Havron v. AT & T, Inc.*, 2009 WL 5030760, at *2 (S.D. Ill. Dec. 16, 2009) ("The provision of the CAFA dealing with the citizenship of unincorporated associations, such as LLCs, is a legislative repeal, of course, of the familiar federal common-law rule that the citizenship of an unincorporated association for diversity purposes is the citizenship of each of the association's members."); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1068 (C.D. Ill. 2016) (citations omitted) ("Noting that the defendants are LLCs, the court would normally require the citizenship of the LLCs to be properly alleged . . . The inquiry would require a determination of the citizenship of each member of the defendant LLCs. However, under CAFA, 'an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'") *See also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700-01 (4th Cir. 2010); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337 361 n.28 (3d Cir. 2013).

25.     In the alternative, Plaintiffs bring this action on behalf of themselves and the members of subclasses ("Subclasses") comprised of:

> All persons residing in the State of Florida who purchased the NuWave Standard Dome and/or Power Dome and/or any NuWave Oven Model containing the Standard or Power Dome, including the NuWave Oven Pro, the NuWave Oven Pro Plus, and the NuWave Oven Elite primarily for personal, family or household purposes, and not for resale (the "Florida Subclass").

> All persons residing in the State of West Virginia who purchased the NuWave Standard Dome and/or Power Dome and/or any NuWave Oven Model containing the Standard or Power Dome, including the NuWave Oven Pro, the NuWave Oven Pro Plus, and the NuWave Oven Elite, primarily for personal, family or household purposes, and not for resale (the "West Virginia Subclass").

> All persons residing in the State of Ohio who purchased the NuWave Standard Dome and/or Power Dome and/or any NuWave Oven Model containing the Standard or Power Dome, including the NuWave Oven Pro, the NuWave Oven Pro Plus, and the NuWave Oven Elite, primarily for personal, family or household purposes, and not for resale (the "Ohio Subclass").

> All persons residing in the State of Texas who purchased the NuWave Standard Dome and/or Power Dome and/or any NuWave Oven Model containing the Standard or Power Dome, including the NuWave Oven Pro, the NuWave Oven Pro Plus, and the NuWave Oven Elite, primarily for personal, family or household purposes, and not for resale (the "Texas Subclass").

> All persons residing in the State of Colorado who purchased the NuWave Standard Dome and/or Power Dome and/or any NuWave Oven Model containing the Standard or Power Dome, including the NuWave Oven Pro, the NuWave Oven Pro Plus, and the NuWave Oven Elite, primarily for personal, family or household purposes, and not for resale (the "Colorado Subclass").

26.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual class members because NuWave has acted on grounds generally applicable to the class with respect to its Ovens, Standard Domes, and Power Domes ("the Products"). Such common legal or factual questions include, but are not limited to:

   a.   Whether the Products are defective;

   b.   Whether the Products are defectively designed and/or manufactured;

   c.   Whether Defendant knew or reasonably should have known about the defects prior

to distributing the Products to Plaintiffs and the class and subclasses;

d.   Whether Defendant concealed from and/or failed to disclose to Plaintiffs and the

class and subclasses the problems with the Products;

e.   Whether Defendant knew or reasonably should have known about the defects after

distributing the Products to Plaintiffs and the class and subclasses;

f.   Whether Defendant breached express warranties relating to the Products;

g.   Whether Defendant breached implied warranties relating to the Products;

h.   Whether Defendant was unjustly enriched by receiving moneys in exchange for

Products that were defective;

i.   Whether Defendant should be ordered to disgorge all or part of the ill-gotten profits

it received from the sale of the defective Products;

j.   Whether Plaintiffs and the class are entitled to damages, including compensatory,

exemplary, and statutory damages, and the amount of such damages;

k.   Whether Defendant should be enjoined from selling and marketing its defective

Products; and

l.   Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices

by selling and/or marketing the defective Products.

27.    Members of the Nationwide Class and Subclasses are so numerous that joinder is

impracticable. While the exact number of class members is unknown to Plaintiff, it is believed that

each comprises thousands of members geographically disbursed throughout the United States.

28.    It is impracticable to bring class members' individual claims before the Court. Class

treatment permits a large number of similarly situated persons or entities to prosecute their common

claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of

evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that

numerous individual actions would engender. The benefits of the class mechanism, including

providing injured persons or entities with a method for obtaining redress on claims that might not

be practicable to pursue individually, substantially outweigh any difficulties that may arise in the

management of this class action.

29.     Plaintiffs' claims are typical of the members of the Nationwide Class and Subclasses, as all members of the Classes and Subclasses are similarly affected by NuWave's actionable conduct. Plaintiffs and all members of the Nationwide Class and Subclasses purchased the NuWave Ovens, Standard Domes and Power Domes when they contained a common defect that makes them worthless. In addition, NuWave's conduct that gave rise to the claims of Plaintiffs and members of the class (*i.e.* delivering defective NuWave Ovens, Standard Domes, and Power Domes making false claims with respect to the Ovens and Domes, and breaching warranties respecting the Ovens and Domes) is the same for all members of the Classes and Subclasses.

30.     Plaintiffs will fairly and adequately protect the interests of the members of the Nationwide Class and Subclasses because they have no interests antagonistic to, or in conflict with, the consumers that they seek to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

31.     Plaintiffs know of no difficulty to be encountered in this action that would preclude its maintenance as a class action.

32.     Defendant has acted or refused to act on grounds generally applicable to the Nationwide Class and Subclasses, thereby making final injunctive relief or corresponding declaratory relief with respect to the Nationwide Class as a whole appropriate.

## **FACTUAL BACKGROUND**

### **A.     NuWave's Deceptive and Misleading Marketing of its Ovens and Domes**

33.      NuWave first introduced its line of signature countertop ovens in 2002.[18] Since then, the company has spent millions of dollars on marketing the ovens, including through a series of infomercials which "have dominated the media for over 15 years."[19] In these infomercials, NuWave boasts that its ovens are "the number one infrared cooking device[s] in the world," and

---

[18] *NuWave Oven: 20 Years of Continuous Innovation and Growing*, NuWave, https://nuwavenow.com/Timeline?ref_version=DIRECT (last visited Mar. 1, 2019).
[19] *NuWave Oven Infomercial Archive*, Nuwave, https://nuwavenow.com/Infomercial?ref_version=DIRECT (last visited Mar. 1, 2019).

claims that they are able to cook food "up to 50% faster than a conventional oven, while using up to 85% less energy." NuWave's aggressive marketing campaign has been enormously effective. The company claims that "over 6 million NuWave Ovens have been sold since its launch."[20]

34.     NuWave specifically states in its infomercials that the Ovens are "safe for the consumer,"[21] and claims on its website that the Standard Domes on the Ovens are "high-quality,"[22] "dishwasher safe,"[23] and "selected for their high durability."[24] In fact, several versions of the boxes for the Pro Model Ovens have referred to the Standard Domes as "lightweight [and] durable," and made of "highly durable polycarbonate," as shown below.[25]



---

[20] *About Us*, Nuwave, https://nuwavenow.com/AboutUs (last visited Mar. 1, 2019).
[21] *See NuWave Oven Informercial*, YouTube, https://www.youtube.com/watch?v=nSPduK_iMhU at 4:00 (last visited Mar. 1, 2019).
[22] *Frequently Asked Questions*, NuWave, http://www.nuwaveoven.com/b239/asp/faq.asp (last visited Mar. 1, 2019).
[23] *Id.*
[24] *Id.*
[25] Arrows inserted



35.     Furthermore, several retailers that sell the Ovens, including Bed Bath and Beyond,

J.C. Penny, and Walmart, relying on information supplied and approved by NuWave, currently

advertise them as having "[d]urable, shatter resistant polycarbonate dome[s]."[26]

36.     Nuwave also advertises its Power Dome by stating that "[t]he **virtually-**

**indestructible Power Dome** is built to withstand the extreme temperatures of the NuWave Oven

Pro Plus. It's tinted to aid in heat retention and delivers superior impact resistance while remaining

dishwasher-safe."[27]

37.     However, a virtually unending stream of consumer complaints contradict NuWave's

representations about the quality and durability of its Ovens:

I was cooking something on my nuwave and **the dome cracked** … I payed [sic] to

---

[26] *See NuWave Oven Product Pages*, Bed Bath and Beyond,
https://www.bedbathandbeyond.com/store/product/nuwave-oven-pro-in-
black/1043094011?Keyword=nuwave oven pro; J.C. Penny,
https://www.jcpenney.com/p/nuwave-oven-pro-20631/pp5005430969?pTmplType=regular;
Walmart, https://www.walmart.com/ip/NuWave-20634-Oven-Pro-Plus-Red/338006618 (all last
visited Mar. 1, 2019).
[27] *NuWave, Parts*, https://www.nuwaveoven.com/parts/ (last visited February 28, 2019) (emphasis
added).

[sic] much MONEY for this to happen. **They said it was durable**.[28]

**Dome cracked** in several places … **the add [sic] said it was indestructible**! Now, I find out, this is typical![29]

… the plastic dome always ends up cracking also the **commercial states it is dishwasher safe**.[30]

**Cracked.  Said was durable**.  Misrepresented.  I shouldn' [sic] pay for defected [sic] product[31]

Nuwave advertises the dome is durable.  Misrepresented.[32]

I had my unit 6 months then the dome melted and cracked.[33]

My dome cracked … I have taken very good care of it, hand wash only, and it sits on the counter so it's not moved to and from places.[34]

38.     Many consumers have reported that they have gone through multiple domes only to experience the exact same defect every time—after minimal use, the Dome cracks:

Since I have purchased my nuwave oven **I had to buy the plastic dome 4 times** because it keeps cracking.[35]

---

[28] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/4/RT-P.html (last visited Mar. 1, 2019).

[29] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/dome-cracked-in-several-places-201712231154747.html (last visited Mar. 1, 2019).

[30] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/the-nuwave-oven-is-amazing-however-201706051056749.html (last visited Mar. 1, 2019).

[31] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-food-dome-review-201702201010995.html (last visited Mar. 1, 2019).

[32] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-food-dome-review-201702191010920.html (last visited Mar. 1, 2019).

[33] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/faulty-dome-201803231217172.html (last visited Mar. 1, 2019).

[34] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/dome-cracked-and-warped-201801161170327.html (last visited Mar. 1, 2019).

[35] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/sick-and-tired-of-have-to-spend-money-each-time-my-nuwave-plastic-dome-cracks-201704111032919.html (last visited Mar. 1, 2019).

While in use at normal use the dome cracked and the crack continued to grow. **This is the second dome to crack**. I will not purchase another Nu-Wave Oven.[36]

**I have 3 nu waves and love the oven, but the domes keep cracking**. I bought 2 ovens last year at the same time and the first dome broke within a couple months. And a few months later the 2nd one broke.[37]

Not only did the orginal [sic] dome crack after 9 months but I then purchased another one at full price. **Now my second dome has broken** in a little less then [sic] a year.[38]

Got one for my daughter and she is having the same issues with hers. So **that makes 2 NuWave ovens that are not living up to expectations**.[39]

I have had two of these Nuwave products & **both times the dome has cracked** … with all the reviews about the same problem occurring why doesn't Nuwave look into this and fix it.[40]

**I have owned 2 and plastic domes cracked** to pieces will not hold up to heat after 10 uses pure junk will never buy again.[41]

**I have bought three of these things and the domes continue to crack** … I feel the company should recall and replace all the domes that have cracked for no reason.[42]

39.     Many of the online complaints are accompanied by pictures that show cracking that

ranges from bad to catastrophic for both the Standard and Power Domes:[43]

---

[36] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-review-201704041029941.html (last visited Mar. 1, 2019).

[37] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/dome-is-no-good-201802151190771.html (last visited Mar. 1, 2019).

[38] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/defective-dome-horrible-customer-service-201802221195203.html (last visited Mar. 1, 2019).

[39] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/clear-dome-cracks-and-continues-to-crack-20170112990129.html (last visited Mar. 1, 2019).

[40] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/cracked-dome-201802051183487.html (last visited Mar. 1, 2019).

[41] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/defective-plastic-dome-201709251105791.html (last visited Mar. 1, 2019).

[42] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/dome-keeps-breaking-201707291081099.html (last visited Mar. 1, 2019).

[43] The sources of these photographs, in order, are: https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-food-dome-review-201702201010995.html; https://nuwave-oven.pissedconsumer.com/clear-dome-cracks-and-continues-to-crack-



20170112990129.html; https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-review-from-stevensville-maryland-20160222795606.html; https://nuwave-oven.pissedconsumer.com/14/RT-P.html; https://nuwave-oven.pissedconsumer.com/the-dome-is-cracked-in-several-places-201711291139084.html; https://nuwave-oven.pissedconsumer.com/nuwave-oven-dome-review-from-colleyville-texas-20160524853728.html; https://nuwave-oven.pissedconsumer.com/broken-dome-multiple-times-201710021109133.html; https://nuwave-oven.pissedconsumer.com/warrenty-up-grade-scam-20150808679559.html (all last visited February 28, 2019).





SECOND AMENDED CLASS ACTION COMPLAINT



16
SECOND AMENDED CLASS ACTION COMPLAINT



40.     The problem is not only that NuWave sells defective products—and that NuWave misleadingly and deceptively markets those products as "high quality," "durable," "safe," "shatter resistant" and "virtually indestructible" when they are demonstrably not—but also that NuWave attempts to cover up the problem rather than acknowledging or fixing it. Many consumers have complained that, when they have contacted NuWave customer service to try and get a replacement dome, they have been kept in the dark or explicitly misled about the fact that the cracking is a common, known defect associated with the Domes:

> **They did not tell this was an ongoing problem** and charged me to replace the dome PLUS postage and handling.[44]

> Called customer service representative **was told no know [sic] defects had been**

---

[44] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/dome-cracked-and-also-wire-grilled-broke-20170117992443.html (last visited Mar. 1, 2019).

**reported**.[45]

41.     NuWave's evasive conduct is even more troubling in light of the fact that it is undeniably aware of the huge volume of complaints about the Domes' cracking defect. In fact, a verified representative of NuWave with the username "JessicaC" has responded hundreds of complaints about the ovens, many of which pertain to cracked Domes, on www.pissedconsumer.com, a popular consumer review website.[46]

42.     Based on NuWave's deceptive marketing of the Ovens, Plaintiffs and members of the Nationwide Class and Subclasses reasonably believed that they were purchasing products which are durable, made from high-quality materials, and free from defects, when in reality, the Ovens suffer from a uniform defect that causes them to crack or shatter after minimal use.

43.     Despite their awareness of the many consumer complaints regarding the cracking defect, NuWave continues to represent to consumers that the Ovens are "safe for the consumer,"[47] "high-quality,"[48] and "dishwasher safe,"[49] and that the Domes on the Ovens are "selected for their high durability,"[50] "lightweight [and] durable," and made of "highly durable" and "shatter resistant polycarbonate,"[51] or are "virtually indestructible."[52]

---

[45] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-review-20170116991673.html (last visited Mar. 1, 2019).

[46] In order to be designated a "verified company representative" on www.pissedconsumer.com, a user must upload business verification documents such as an internet, phone, or electricity bill, seller's permit, business card, IRS issued FEIN assignment letter, or business license. *See* https://www.pissedconsumer.com/business-solutions/signUpPlan.html?contract_type=free-plan.

[47] *See NuWave Oven Informercial*, YouTube, https://www.youtube.com/watch?v=nSPduK_iMhU at 4:00 (last visited Mar. 1, 2019).

[48] *See Frequently Asked Questions*, NuWave, http://www.nuwaveoven.com/b239/asp/faq.asp (last visited Mar. 1, 2019).

[49] *Id.*

[50] *Id.*

[51] *See See NuWave Oven Product Pages*, Bed Bath and Beyond, https://www.bedbathandbeyond.com/store/product/nuwave-oven-pro-in-black/1043094011?Keyword=nuwave oven pro; J.C. Penny, https://www.jcpenney.com/p/nuwave-oven-pro-20631/pp5005430969?pTmplType=regular; Walmart, https://www.walmart.com/ip/NuWave-20634-Oven-Pro-Plus-Red/338006618 (all last visited Mar. 1, 2019).

[52] *NuWave, Parts*, https://www.nuwaveoven.com/parts/ (last visited February 28, 2019).

44.     In this way, NuWave actively misleads consumers about the true nature the Ovens and their Domes. Reasonable consumers would consider the existence of a cracking defect to be important in determining whether or not to purchase the Ovens and Domes, given that the Ovens cannot be used with damaged domes.

45.     NuWave knows, or reasonably should know, that its representations are deceptive, misleading, and unlawful, and intends that consumers rely on them.

46.     As the direct and proximate result of NuWave's false, deceptive and/or misleading statements, Plaintiffs and members of the putative Nationwide Class and Subclasses have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Ovens and Domes.

**B.     NuWave's Breaches of its Express Warranties**

**i.     NuWave Breaches its Express Warranties Regarding the Quality, Durability, and Workmanship of its Ovens and Domes**

47.     By making the representations described above—specifically, that the Ovens are "safe for the consumer,"[53] "high-quality,"[54] and "dishwasher safe,"[55] and that the Domes on the Ovens are "selected for their high durability,"[56] "lightweight [and] durable," and made of "highly durable," "shatter resistant polycarbonate"[57] and that they are "virtually indestructible"[58]—NuWave expressly warrants that the Ovens will remain intact and continue to be functional after a reasonable period of use.

---

[53] *See NuWave Oven Informercial*, YouTube, https://www.youtube.com/watch?v=nSPduK_iMhU at 4:00 (last visited Mar. 1, 2019).

[54] *See Frequently Asked Questions*, NuWave, http://www.nuwaveoven.com/b239/asp/faq.asp (last visited Mar. 1, 2019).

[55] *Id.*

[56] *Id.*

[57] *See See NuWave Oven Product Pages*, Bed Bath and Beyond, https://www.bedbathandbeyond.com/store/product/nuwave-oven-pro-in-black/1043094011?Keyword=nuwave oven pro; J.C. Penny, https://www.jcpenney.com/p/nuwave-oven-pro-20631/pp5005430969?pTmplType=regular; Walmart, https://www.walmart.com/ip/NuWave-20634-Oven-Pro-Plus-Red/338006618 (all last visited Mar. 1, 2019).

[58] *NuWave, Parts*, https://www.nuwaveoven.com/parts/ (last visited February 28, 2019).

48.     In fact, the Domes fail due to a common defect which causes fatigue cracks. On information and belief, these cracks in both the Standard and Power Domes are a result of a host of issues including but not limited to the thermal cycling of the Ovens, the properties of the polymer material used to construct the Domes, and the stresses in the Domes from the forming process.

49.     Neither molded polycarbonate nor polysulfone are suitable for this application (the materials of the Standard and Power Domes, respectively). For example, factors including the residual stresses, temperature fluctuations, and the properties of both of these materials can cause fatigue cracks to form, and the Domes crack and fail.

50.     The NuWave Oven "Manual and Complete Cookbook"[59] states that the oven's maximum temperature setting is 350°F.

51.     The vast majority of the recipes contained in the "Manual and Complete Cookbook" recommends setting the oven to "350°F."[60]

52.     Given that the maximum continuous use temperature for polycarbonate is 240°F, and for polysulfone is 285°F, the temperatures in the NuWave oven are too high—in fact, over 100°F too high for polycarbonate and over 60°F too high for polysulfone for either to be an appropriate Dome material.

53.     In addition to the express warranties contained in its marketing materials, NuWave provides each purchaser of an Oven with an owner's manual that contains a warranty stating that the Ovens and their Domes are free from defects:

> The infrared cooking system including power head, dome, cooking rack, liner pan, base, and all electrical components are to be free from defects and [sic] workmanship under normal household use, when operated in accordance with the Manufacturer's written instructions provided with each unit for one (1) year from date of purchase.[61]

54.     Both NuWave's marketing language and the written warranty contained in the owner's manual form the basis of the bargain for consumers.

---

[59] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC, http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019).
[60] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC, http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019).

55.     NuWave violates these express written warranties by selling its Ovens with a known defect that causes them to crack in a short amount of time.

### ii.     NuWave Breaches its Express Warranty Regarding Consumers' Right to Obtain Replacement Parts

56.     In addition to violating its express written warranties with respect to the quality and workmanship of its products, NuWave also fails to honor its promise to replace or repair defective parts within the one-year warranty period. The Ovens' warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use.
> NuWave, LLC will provide the necessary parts and labor to repair or replace the
> NuWave Oven during this time.[62]

57.     When consumers attempt to take advantage of this warranty, however, they find that the Standard Dome is not in stock, or if it is, they must pay unreasonable shipping costs to obtain it:

> My unit was 7 months old … **despite still being under "warranty", they would not replace it** …[The customer service representative] first offered me the upgraded "power dome" for $20 plus $13.95 shipping. When I told them that was unreasonable, I was then told they would lower the shipping to $9.95, cost of dome is the same.[63]

> That dome cracked into 3 pieces. I called New Wave, and i was told that **if i would only spend $50.00 more dollars, they would send a new one** that has a 3 year warranty. Why would i want to spend an additional $50.00 for something that will not last more than 3 years, after paying over $100.00 for my oven?[64]

> New wave want to charge you to replace it … they claim to have one is stronger on newer models that last longer, still plastic. But that leave us still **no good replacement for those that have the old models**.[65]

---

[62] *NuWave Oven Terms and Conditions*, NuWave,
https://www.nuwaveoven.com/resource/html/terms_condition.asp (last visited Mar. 1, 2019).
[63] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/defective-dome-horrible-customer-service-201802221195203.html (last visited Mar. 1, 2019).
[64] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-double-dipping-20170714074161.html (last visited Mar. 1, 2019).
[65] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/dome-new-wave-oven-201709071097525.html (last visited Mar. 1, 2019).

Original oven dome cracked, two long sweeping cracks … **No replacements available.** Like an unsuspecting consumer, I assumed fault was mine and purchased the new power pro plus.[66]

Dome cracked and I purchased another clear one. That one also cracked after a year and **the new amber colored dome to replace was all the was available**.[67]

I have now purchased 4 nu wave ovens. Every Dome cracks within the first couple of months in use … **The company refuses to replace the plastic domes and what customers to buy new ones each time … The domes are never in stock** from the 1st nuwave I purchased to the 4 one that is now broken.[68]

I change 2 times my dome and payed [sic] for the shipping and still cracked in 1 week. Now they are asking me to pay another $20 to send me a [sic] upgrade dome because **they don't have anymore the clear one**. They are a scam don't buy it and don't trust them.[69]

58.     In addition to confirming that NuWave makes it impossible or unreasonably costly for consumers to obtain replacement Standard Domes, these complaints also reveal a troubling pattern. Specifically, they demonstrate that when consumers complain about their cracked Standard Domes, NuWave has a standard practice of failing and/or refusing to offer a replacement, and instead pressuring them to pay to upgrade to NuWave's newer, more expensive Power Dome.

59.     On the consumer complaint website, www.pissedconsumer.com, almost all of NuWave's responses to consumer complaints about cracked domes contain the following language, which urges consumers to upgrade to the Power Dome:

Dear Nuwave Oven Customer,
Thank you for your honest feedback. Nuwave sincerely apologizes for the issues you are having with your Nuwave dome … Nuwave continues to strive to update and refine our products to be more modern and efficient. That being said, we do now offer our new Power Dome … The virtually-indestructible Power Dome is built to

---

[66] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-oven-oven-review-201703121020003.html (last visited Mar. 1, 2019).
[67] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave.oven.pissedconsumer.com/nuwave-oven-review-in-appliances-and-electronics-category-201702251013773.html (last visited Mar. 1, 2019).
[68] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave.oven.pissedconsumer.com/nu-wave-dome-issues-20170126997904.html (last visited Mar. 1, 2019).
[69] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/new-wave-oven-20170118993387.html (last visited Mar. 1, 2019).

> withstand extreme temperatures. Made from polyphenylsulfone (PPSU), a material
> which delivers superior impact resistance while remaining BPA-free, the Power
> Dome uses similar technology applied in the manufacturing of jumbo jet windshields
> and NASA spaceships. In fact, the Power Dome is so strong, it's backed by a 3-year
> warranty.[70]

This statement confirms what the consumer complaints make clear—that when consumers contact

NuWave to complain about the defective Standard Domes, the company tries to extract more

money from them by encouraging them to purchase the newer, more expensive, and supposedly

stronger Power Dome.

60.     This "solution" is no solution at all. As one consumer succinctly put it, after

receiving the response above:

> **when I called for remediation, your company offered to sell me another part**
> … I think you are responsible for the poor choice of materials, poor construction,
> and therefore should upgrade the lid on any and all of the products out there in the
> field with similar problems. **I see this as perhaps dodging the issue, and surely
> not a fair solution.[71]**

## THE EXPERIENCE OF THE NAMED PLAINTFFS

### a.  Plaintiff Elizabeth Aguilera:

61.     Plaintiff Elizabeth Aguilera has purchased, owned, or used four different NuWave

Ovens, all of which came with Standard Domes, and all of which cracked after minimal use.

62.     Ms. Aguilera purchased her first NuWave Oven from Target in or around October,

2016. She gave this oven to a friend as a wedding present. Approximately seven months later, the

friend informed Ms. Aguilera that the oven's dome had cracked and that the oven was no longer

usable.

63.     Also in 2016, Ms. Aguilera's mother-in-law was gifted a NuWave Oven and brought

it to their shared home. Ms. Aguilera cooked with this oven regularly until it cracked several months

later.

---

[70] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nu-wave-dome-issues-20170126997904.html (last visited Mar. 1, 2019).
[71] *NuWave Oven Consumer Complaint*, Pissed Consumer, https://nuwave-oven.pissedconsumer.com/nuwave-sidesteps-responsibility-for-shabby-workmanship-design-but-offers-to-sell-you-replacement-parts-to-remedy-the-problem-201801231174802.html (last visited Mar. 1, 2019) (emphasis added).

64.     Because the oven her mother-in-law had purchased oven was now unusable, Ms. Aguilera purchased a whole new oven at Kohl's in or around December, 2016. After approximately six months of semi-regular use, this oven cracked in several places.

65.     Shortly thereafter, Ms. Aguilera called NuWave's customer service hotline. The customer service representative she spoke to informed her that the "free" clear replacement Standard Dome was out of stock, and that even when it was back in stock, she would have to pay a significant amount in shipping and handling costs to have it sent to her.

66.     The customer service representative told her that, as an alternative, she could upgrade to the stronger Power Dome, but would have to pay a for the dome itself as well as shipping and handling.

67.     Ms. Aguilera determined that neither of these options were worth the cost, especially when, at certain retailers, she could purchase a whole new oven for approximately $100.00.

68.     Ms. Aguilera did purchase a new oven, again at Kohl's, in or around Spring 2017. She has owned this oven for approximately one year, and it has also cracked.

69.     Prior to her purchases, Ms. Aguilera saw advertisements for the NuWave Oven Pro that claimed it was a high-quality, reliable product. She purchased the NuWave Oven in reliance upon those promises—believing that the NuWave oven was, in fact, durable and built from high-quality materials and would not prematurely fail. Ms. Aguilera suffered injury as a result of her purchase of the Nuwave Ovens because she was deceived into purchasing them based on Defendant's representations.

70.     At no time did Defendant provide Ms. Aguilera with any warnings concerning the cracking defect associated with its Ovens. Had Plaintiff Aguilera known of the existence of the defect, she would not have purchased the Ovens, or would have paid significantly less for them.

71.     Additionally, had Plaintiff Aguilera known the NuWave Ovens were not "high quality," "durable," "safe," or "shatter resistant," she would not have purchased them or would have paid significantly less for them.

72.     Plaintiff Aguilera would purchase NuWave Ovens and/or Domes in the future if she could be assured they were not defective.

**b. <u>Plaintiff Crystal Russell:</u>**

73.     Plaintiff Crystal Russell purchased a NuWave Oven with a clear Standard Dome by calling an informational commercial in or around January, 2017.

74.     Despite the fact that Ms. Russell used the Oven infrequently, the dome cracked within approximately six months, in or around July, 2017.

75.     Shortly thereafter, Ms. Russell called the NuWave customer service hotline in order to see if they could send her a replacement for her broken and unusable Dome.

76.     She was told by the customer service representative that the company could send her a replacement Standard Dome, but she would have to pay a significant amount in shipping and handling fees.

77.     On the same call, the customer service representative told Ms. Russell that the company also sold a stronger, more durable dome called the Power Dome, and encouraged her to pay extra to upgrade.

78.     Plaintiff Russell declined to purchase a new Standard Dome or Oven, or to upgrade to a Power Dome. She no longer trusted the company because she had believed her over was covered by a one-year-warranty only to find out that, even though the product she had purchased was defective, the company would not send her a free replacement.

79.     At no time did Defendant provide Ms. Russell with any warnings concerning the cracking defect associated with its Ovens. Had Ms. Russell known of the existence of the defect, she would not have purchased the Oven, or would have paid significantly less for them.

80.     Plaintiff Russell would purchase NuWave Ovens and/or Domes in the future if she could be assured they were not defective.

c. **Plaintiff Teresa DiSalvo:**

81.     Plaintiff Teresa DiSalvo has been a NuWave Oven customer for over ten years, and has had to replace the Domes of her Ovens at least three times during that period.

82.     On October 20, 2017, Ms. DiSalvo purchased a NuWave Oven Elite, containing a Power Dome, from Amazon.com for approximately $139.99.

83.     Ms. DiSalvo had seen the Elite model Oven and corresponding Power Dome advertised as being shatter-resistant and durable, and was willing to pay a significant amount for the Oven partially because of these claims.

84.     However, within two months, in or around late December, 2017, Ms. DiSalvo's Power Dome cracked in several places.

85.     Ms. DiSalvo knew that the Oven was still under warranty at the time, so she called NuWave's customer service hotline.

86.     The customer service representative asked Ms. DiSalvo to send her pictures of the cracked dome, which she did on or about January 2, 2018. After the customer service representative received these pictures, she arranged for a new Power Dome to be sent to Ms. DiSalvo.

87.     However, this new Power Dome was not free. NuWave charged Ms. DiSalvo $13.95 in shipping and handling fees.

88.     Even worse, this new Power Dome also quickly developed serious cracks.

89.     Ms. DiSalvo had arranged for the replacement Dome to be sent to her daughter's home, as she herself planned to be away in Florida for three months, from approximately January 2018 to March 2018. The Oven was not used during this period.

90.     Upon her return, Plaintiff DiSalvo used the oven for only three weeks before she began to notice cracks.

91.     Prior to her purchases, Ms. DiSalvo saw advertisements for the NuWave Oven that claimed it was a high-quality, shatter-resistant, and durable product. She purchased the NuWave Oven in reliance upon those promises—believing that the NuWave oven was, in fact, durable and built from high-quality materials and would not prematurely fail. Ms. DiSalvo suffered injury as a

result of her purchase of the Nuwave Ovens because she was deceived into purchasing them based on Defendant's representations.

92.    At no time did Defendant provide Ms. DiSalvo with any warnings concerning the cracking defect associated with its Ovens. Had Plaintiff Aguilera known of the existence of the defect, she would not have purchased the Ovens, or would have paid significantly less for them.

93.    Additionally, had Ms. DiSalvo known the NuWave Ovens were not durable or shatter-resistant, she would not have purchased them or would have paid significantly less for them.

94.    Plaintiff DiSalvo would purchase NuWave Ovens and/or Domes in the future if she could be assured they were not defective.

### d. Plaintiff Emma Mendoza

95.    Plaintiff Emma Mendoza purchased a NuWave Oven Pro containing a Power Dome in or around April, 2016, directly from NuWave.

96.    Ms. Mendoza purchased this Oven to replace another Oven she had purchased in January 2014, whose Power Dome had cracked. This Oven was also purchased directly from NuWave.

97.    By February, 2018, the Power Dome on the replacement Oven Ms. Mendoza had purchased had cracked noticeably.

98.    In March, 2018, the cracks in the Dome allowed heat to escape and compromise the cord used to plug it into the wall. This caused sparks to shoot out of the cord.

99.    Luckily, Ms. Mendoza was able to quickly yank the exposed cord out of the outlet before it could start a fire or injure anyone.

100.    Shortly after this incident, and to the best of Ms. Mendoza's recollection, within the two-year Power Dome warranty period, she called NuWave's customer service hotline and explained what had happened.

101.    The customer service representative Ms. Mendoza spoke to told her that her Oven was not under any warranty and indicated that the cost of shipping a replacement Dome would exceed the cost of simply buying a new Oven.

102.     As a result, in April 2016, Ms. Mendoza purchased a new NuWave Oven in April 2016—this time with a clear dome, as she did not wish to pay a premium for a product that had proven to be unreliable and prone to cracking.

103.     At no time did Defendant provide Ms. Mendoza with any warnings concerning the cracking defect associated with its Ovens. Had Ms. Mendoza known of the existence of the defect, she would not have purchased the Ovens, or would have paid significantly less for them.

104.     Additionally, had Ms. Mendoza known the NuWave Power Domes were not durable or shatter-resistant, she would not have purchased them or would have paid significantly less for them.

105.     Plaintiff Mendoza would purchase NuWave Ovens and/or Domes in the future if she could be assured they were not defective.

e.  **Plaintiff Shauntiquea Foston**

106.     Plaintiff Shauntiquea Foston, who works as a Veterans Administration voucher examiner, purchased a NuWave Oven containing a clear Standard Dome from a Veterans Administration hospital store in or around December of 2017, because her family was due to visit over the holidays and she wanted a device that would make cooking easier.

107.     The hospital store has a special "As Seen on TV" section, which is where Ms. Foston found the Oven.

108.     After approximately six weeks of use, during which Ms. Foston only used the Oven three times, it cracked.

109.     Shortly thereafter, Ms. Foston contacted the store from which she had purchased the Oven, but was told she would have to deal with NuWave customer service directly.

110.     Ms. Foston did as the store suggested, and called the NuWave customer service hotline. She told them that she had heard on the NuWave infomercial that the Oven was covered by some kind of warranty.

111.     The customer service representative told her she was mistaken and the Oven was not under warranty.

112.     The customer service representative also told Ms. Foston that she should purchase a Power Dome, because it was stronger and made of higher quality materials.

113.     Ms. Foston declined to do so, because she was disappointed in how quickly her first Oven had become cracked and unusable and unsatisfied with how the company had handled her complaint.

114.     At no time did Defendant provide Ms. Foston with any warnings concerning the cracking defect associated with its Ovens. Had Ms. Foston known of the existence of the defect, she would not have purchased the Ovens, or would have paid significantly less for them.

115.     Additionally, had Ms. Foston known the NuWave Power Domes were not durable or shatter-resistant, she would not have purchased them or would have paid significantly less for them.

116.     Plaintiff Foston would purchase NuWave Ovens and/or Domes in the future if she could be assured they were not defective.

<u>CAUSES OF ACTION</u>

**A.     <u>EXPRESS WARRANTY CLAIMS</u>**

**COUNT I**
**(Breach of Express Warranty—Magnuson Moss Warranty Act—**
**On Behalf of the Nationwide Class and All Subclasses)**

117.     Plaintiffs re-allege and incorporate each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

118.     NuWave Ovens are consumer products as defined in 15 U.S.C. § 2301(1).

119.     Plaintiffs and class members are consumers as defined in 15 U.S.C. § 2301(3).

120.     NuWave is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

121.     NuWave provided Plaintiffs and class members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

122.     By advertising the Ovens as "high quality," "durable," "safe," and "shatter resistant," and by providing consumers with owner's manuals stating that "the infrared cooking system including … dome … are to be free from defects and [sic] workmanship under normal household

use,"[72] NuWave expressly warranted to Plaintiffs and class members that the Ovens would continue to work after a reasonable period of use.

123.    Such statements became the basis of the bargain for Plaintiffs and other class members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end kitchen appliances.

124.    NuWave breached these express warranties by delivering Ovens that do not function as promised and fail to withstand normal use.

125.    Additionally, NuWave breached its express warranty stating that it would replace or repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair or replace the NuWave Oven during this time.[73]

126.    NuWave breached this express warranty by repeatedly failing to repair or replace Plaintiffs' defective Ovens and/or Standard or Power Domes with non-defective products. At no time has NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

127.    At the time the Ovens were sold, NuWave knew of the defects they possessed and offered an express warranty with no intention of honoring the warranty with respect to the known defects.

128.    Despite repeated demands by Plaintiffs and members of the Nationwide Class and all Subclasses that NuWave repair or replace the defective Ovens, NuWave has refused to provide a permanent fix. NuWave's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

129.    NuWave was afforded a reasonable opportunity to cure its breach of the express warranty but failed to do so.

---

[72] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC, http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019).
[73] *NuWave Oven Terms and Conditions*, NuWave, https://www.nuwaveoven.com/resource/html/terms_condition.asp (last visited Mar. 1, 2019).

130.     As a direct and proximate result of the foregoing breaches of express warranty, Plaintiffs and the Nationwide Class and all Subclasses have been damaged in that they purchased Ovens that could not perform as warranted; did not receive the benefit of the bargain of their purchases including the promise of free replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

131.     Plaintiffs and the Nationwide Class and all Subclasses seek all damages permitted by law in an amount to be determined at trial.

## COUNT II
### (Breach of Express Warranty—On Behalf of Nationwide Class)

132.     Plaintiffs re-allege and incorporates each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

133.     By advertising the Ovens as "high quality," "durable," "safe," and "shatter resistant," and by providing consumers with owner's manuals stating that "the infrared cooking system including … dome … are to be free from defects and [sic] workmanship under normal household use,"[74] NuWave expressly warranted to Plaintiffs and Nationwide class members that the Ovens would continue to work after a reasonable period of use.

134.     Such statements became the basis of the bargain for Plaintiffs and other Nationwide class members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end kitchen appliances.

135.     NuWave breached these express warranties by delivering Ovens that do not function as promised and fail to withstand normal use.

136.     Additionally, NuWave breached its express warranty stating that it would replace or repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC
> will provide the necessary parts and labor to repair or replace the NuWave Oven during

---

[74] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC, http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019).

this time.[75]

137.    NuWave breached this express warranty by repeatedly failing to repair or replace Plaintiffs' defective Ovens and/or Standard or Power Domes with non-defective products. At no time has NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

138.    At the time the Ovens were sold, NuWave knew of the defects they possessed and offered an express warranty with no intention of honoring said warranty with respect to the known defects.

139.    As a direct and proximate result of the foregoing breaches of express warranty, Plaintiffs and the Nationwide Class have been damaged in that they purchased Ovens that could not perform as warranted; did not receive the benefit of the bargain of their purchases including the promise of free replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

140.    Plaintiffs and the Nationwide Class seek all damages permitted by law in an amount to be determined at trial.

## COUNT III
### (In the Alternative, Breach of Express Warranty on
### Behalf of the Florida Subclass Under Fla. Stat. § 672.313)

141.    Plaintiff Aguilera re-alleges and incorporate each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

142.    By advertising the Ovens as "high quality," "durable," "safe," and "shatter resistant," and by providing consumers with owner's manuals stating that "the infrared cooking system including … dome … are to be free from defects and [sic] workmanship under normal household use,"[76] NuWave expressly warranted to Plaintiff Aguilera and Florida Subclass members that the Ovens would continue to work after a reasonable period of use.

143.    Such statements became the basis of the bargain for Plaintiff Aguilera and other Florida

---

[75] *NuWave Oven Terms and Conditions*, NuWave,
https://www.nuwaveoven.com/resource/html/terms_condition.asp (last visited Mar. 1, 2019).
[76] *NuWave Pro Plus Infrared Oven Manual & Complete Cookbook*, QVC,
http://www.qvc.com/footers/cd/pdf/K45095_NuWavePro_Manual.pdf (last visited Mar. 1, 2019).

Subclass members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end kitchen appliances.

144.    NuWave breached these express warranties by delivering Ovens that do not function as promised and fail to withstand normal use.

145.    Additionally, NuWave breached its express warranty stating that it would replace or repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair or replace the NuWave Oven during this time.[77]

NuWave breached this express warranty by repeatedly failing to repair or replace Plaintiff Aguilera's defective Ovens and/or Domes with non-defective products. At no time has NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

146.    Plaintiff Aguilera and the Florida Subclass members relied on NuWave's express warranties regarding the characteristics and qualities of the Ovens.

147.    As a result of the foregoing breaches of express warranty in violation of Fla. Stat. § 672.313, Plaintiff Aguilera and the Florida Subclass have been damaged in that they purchased Ovens that could not perform as warranted; did not receive the benefit of the bargain of their purchases including the promise of free replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

148.    Plaintiff Aguilera and the Florida Subclass seek all damages permitted by law in an amount to be determined at trial.

### COUNT IV
### (In The Alternative, Breach of Express Warranty, On Behalf Of The Ohio Subclass under Ohio Rev. Code § 1302.01)

149.    Plaintiff DiSalvo re-alleges and incorporates each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

---

[77] *NuWave Oven Terms and Conditions*, NuWave, https://www.nuwaveoven.com/resource/html/terms_condition.asp (last visited Mar. 1, 2019).

150.     Defendant NuWave is a "seller" within the meaning of Ohio Rev. Code §
1302.01(a)(4).

151.     The Ovens are "goods" within the meaning of Ohio Rev. Code § 1302.01(a)(8).

152.     Plaintiff DiSalvo and the members of the Ohio Subclass are "buyers" within the
meaning of Ohio. Rev. Code § 1302.01(a)(1).

153.     By advertising the Ovens as "high quality," "durable," "safe," and "shatter
resistant," and by providing consumers with owner's manuals stating that "the infrared cooking
system including … dome … are to be free from defects and [sic] workmanship under normal
household use," NuWave expressly warranted to Plaintiff DiSalvo and Ohio Subclass members that
the Ovens would continue to work after a reasonable period of use.

154.     Such statements became the basis of the bargain for Plaintiff DiSalvo and other
Ohio Subclass members because such statements are among the facts a reasonable consumer would
consider material in the purchase of high-end kitchen appliances.

155.     NuWave breached these express warranties by delivering Ovens that do not
function as promised and fail to withstand normal use.

156.     Additionally, NuWave breached its express warranty stating that it would replace or
repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave,
> LLC will provide the necessary parts and labor to repair or replace the NuWave
> Oven during this time.

157.     NuWave breached this express warranty by repeatedly failing to repair or replace
Plaintiff DiSalvo's defective Oven and/or Dome with non-defective products. At no time has
NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

158.     Plaintiff DiSalvo  and the Ohio Subclass members relied on NuWave's express
warranties regarding the characteristics and qualities of the Ovens.

159.     As a result of the foregoing breaches of express warranty, Plaintiff DiSalvo and the
Ohio Subclass have been damaged in that they purchased Ovens that could not perform as

warranted; did not receive the benefit of the bargain of their purchases including the promise of free replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

160.     Plaintiff DiSalvo and the Ohio Subclass seek all damages permitted by law in an amount to be determined at trial.

**COUNT V**
**(In The Alternative, Breach of Express Warranty,**
**On Behalf Of The Texas Subclass under Tex. Bus. & Com. Code § 2.313)**

161.     Plaintiff Mendoza re-allege and incorporates each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

162.     Defendant NuWave is a "seller" within the meaning of Tex. Bus. & Com. Code § 2.103.

163.     The Ovens are "goods" within the meaning of Tex. Bus. & Com. Code § 2.105.

164.     Plaintiff Mendoza and the members of the Texas Subclass are "buyers" within the meaning of Tex. Bus. & Com. Code § 2.103.

165.     By advertising the Ovens as "high quality," "durable," "safe," and "shatter resistant," and by providing consumers with owner's manuals stating that "the infrared cooking system including … dome … are to be free from defects and [sic] workmanship under normal household use," NuWave expressly warranted to Plaintiff Mendoza and Texas Subclass members that the Ovens would continue to work after a reasonable period of use pursuant to Tex. Bus. & Com. Code § 2.313.

166.     Such statements became the basis of the bargain for Plaintiff Mendoza and other Texas Subclass members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end kitchen appliances.

167.     NuWave breached these express warranties by delivering Ovens that do not function as promised and fail to withstand normal use.

168.     Additionally, NuWave breached its express warranty stating that it would replace or

repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair or replace the NuWave Oven during this time.

169.     NuWave breached this express warranty by repeatedly failing to repair or replace Plaintiff Mendoza's defective Ovens and/or Domes with non-defective products. At no time has NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

170.     Plaintiff Mendoza and the Texas Subclass members relied on NuWave's express warranties regarding the characteristics and qualities of the Ovens.

171.     Defendant has received sufficient and timely notice of the breaches of express warranty alleged herein. Despite this notice and Defendant's knowledge, Defendant refuses to honor its express warranties, even though it knows of the inherent defect(s) in the Ovens.

172.     As a result of the foregoing breaches of express warranty, Plaintiff Mendoza and the Texas Subclass have been damaged in that they purchased Ovens that could not perform as warranted; did not receive the benefit of the bargain of their purchases including the promise of free replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

173.     Plaintiff Mendoza and the Texas Subclass seek all damages permitted by law in an amount to be determined at trial.

## COUNT VI
### (In The Alternative, Breach of Express Warranty, On Behalf Of The West Virginia Subclass under W. Va. Code, § 46-2-313)

174.     Plaintiff Russell re-alleges and incorporates each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

175.     Defendant NuWave is a "seller" within the meaning of W. Va. Code, § 46-2-103.

176.     The Ovens are "goods" within the meaning of W. Va. Code, § 46-2-105.

177.     Plaintiff Russell and the members of the West Virginia Subclass are "buyers" within the meaning of W. Va. Code, § 46-2-103.

178.    By advertising the Ovens as "high quality," "durable," "safe," and "shatter resistant," and by providing consumers with owner's manuals stating that "the infrared cooking system including … dome … are to be free from defects and [sic] workmanship under normal household use," NuWave expressly warranted to Plaintiff Russell and West Virginia Subclass members that the Ovens would continue to work after a reasonable period of use pursuant to W. Va. Code, § 46-2-313.

179.    Such statements became the basis of the bargain for Plaintiff Russell and other West Virginia Subclass members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end kitchen appliances.

180.    NuWave breached these express warranties by delivering Ovens that do not function as promised and fail to withstand normal use.

181.    Additionally, NuWave breached its express warranty stating that it would replace or repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair or replace the NuWave Oven during this time.

182.    NuWave breached this express warranty by repeatedly failing to repair or replace Plaintiff Russell'ss defective Oven and/or Dome with non-defective products. At no time has NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

183.    Plaintiff Russell and the West Virginia Subclass members relied on NuWave's express warranties regarding the characteristics and qualities of the Ovens.

184.    Defendant has received sufficient and timely notice of the breaches of express warranty alleged herein. Despite this notice and Defendant's knowledge, Defendant refuses to honor its express warranties, even though it knows of the inherent defect(s) in the Ovens.

185.    As a result of the foregoing breaches of express warranty, Plaintiff Russell and the West Virginia Subclass have been damaged in that they purchased Ovens that could not perform as warranted; did not receive the benefit of the bargain of their purchases including the promise of free

replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

186.     Plaintiff Russell and the West Virginia Subclass seek all damages permitted by law in an amount to be determined at trial.

## COUNT VII
### (In The Alternative, Breach of Express Warranty, On Behalf Of The Colorado Subclass under Colo. Rev. Stat. Ann. § 4-2-313)

187.     Plaintiff Foston re-alleges and incorporates each and every allegation set forth in paragraphs one through one hundred sixteen above as if fully written herein.

188.     Defendant NuWave is a "seller" within the meaning of Colo. Rev. Stat. Ann. § 4-2-103.

189.     The Ovens are "goods" within the meaning of Colo. Rev. Stat. Ann. § 4-2-105.

190.     Plaintiff Foston and the members of the Colorado Subclass are "buyers" within the meaning of Colo. Rev. Stat. Ann. § 4-2-103.

191.     By advertising the Ovens as "high quality," "durable," "safe," and "shatter resistant," and by providing consumers with owner's manuals stating that "the infrared cooking system including … dome … are to be free from defects and [sic] workmanship under normal household use," NuWave expressly warranted to Plaintiff Foston and Colorado Subclass members that the Ovens would continue to work after a reasonable period of use pursuant to Colo. Rev. Stat. Ann. § 4-2-313.

192.     Such statements became the basis of the bargain for Plaintiff Foston and other Colorado Subclass members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end kitchen appliances.

193.     NuWave breached these express warranties by delivering Ovens that do not function as promised and fail to withstand normal use.

194.     Additionally, NuWave breached its express warranty stating that it would replace or repair, free of charge, any defective NuWave Oven. NuWave's one-year warranty states:

> The NuWave Oven is covered for a full one (1) year under normal use. NuWave, LLC will provide the necessary parts and labor to repair or replace the NuWave Oven during this time.

195.     NuWave breached this express warranty by repeatedly failing to repair or replace Plaintiff Foston's' defective Oven and/or Power Dome with non-defective products. At no time has NuWave offered a permanent or adequate repair or replacement of the defective Ovens.

196.     Plaintiff Foston and the Colorado Subclass relied on NuWave's express warranties regarding the characteristics and qualities of the Ovens.

197.     Defendant has received sufficient and timely notice of the breaches of express warranty alleged herein. Despite this notice and Defendant's knowledge, Defendant refuses to honor its express warranties, even though it knows of the inherent defect(s) in the Ovens.

198.     As a result of the foregoing breaches of express warranty, Plaintiff Foston and the Colorado Subclass have been damaged in that they purchased Ovens that could not perform as warranted; did not receive the benefit of the bargain of their purchases including the promise of free replacement or repair; and did not receive a permanent or adequate repair or replacement products under NuWave's one-year warranty.

199.     Plaintiff Foston and the Colorado Subclass seek all damages permitted by law in an amount to be determined at trial.

**B.     IMPLIED WARRANTY CLAIMS**

### COUNT VIII
### (Violation of 15 U.S.C. § 2301 *et seq.*: The Magnuson-Moss Warranty Act— Implied Warranty—On Behalf of the Nationwide Class and All Subclasses)

200.     Plaintiffs re-allege and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

201.     Plaintiffs bring this claim on behalf of the Nationwide Class and the Subclasses.

202.     NuWave Ovens are consumer products as defined in 15 U.S.C. § 2301.

203.     Plaintiffs and members of the Nationwide Class and the Subclasses are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

204.    NuWave is a "supplier" of the consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

205.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

206.    NuWave made written and implied warranties regarding the Ovens to Plaintiffs and members of the Nationwide Class and the Subclasses within the meaning of 15 U.S.C. § 2301. NuWave provided Plaintiffs and other members of the Nationwide Class and the Subclasses with an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

207.    NuWave breached the implied warranty of merchantability because the Ovens were not fit for the ordinary purpose in which such goods are used. Specifically, the Ovens contained a defect that caused them to crack after a brief period of normal use, rendering them unusable.

208.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and is not required to give NuWave notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

209.    Plaintiffs' individual claims place into controversy an amount equal to or exceeding $25.00. The amount in controversy of this entire action exceeds the sum of $50,000.00, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other class members, seek all damages permitted by law in an amount to be proven at trial.

210.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the members of the Nationwide Class and Subclasses are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the

Court to have reasonably been incurred by Plaintiffs and the members of the Nationwide Class and Subclasses in connection with the commencement and prosecution of this action.

211.     Further, Plaintiffs, the Nationwide Class, and the Subclasses are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of NuWave's violation of its written and/or implied warranties.

## COUNT IX
### (In the Alternative, Breach of Implied Warranty of Merchantability and Implied Warranty of Fitness for a Particular purpose on Behalf of the Florida Subclass Under Fla. Stat. §§ 672.314 and 672.315)

212.     Plaintiff Aguilera re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

213.     NuWave is a "merchant" of the Ovens because NuWave is a retail seller of countertop ovens and parts and routinely sells a wide variety of kitchen appliances.

214.     NuWave is also the manufacturer of the Ovens.

215.     Plaintiff Aguilera and members of the Florida Subclass are "buyers" of the Ovens because they purchased their ovens for personal use.

216.     NuWave impliedly warranted to Plaintiff Aguilera and Florida Subclass members that its Ovens were "merchantable" within the common meaning of "merchantability" expressed in Fla. Stat. §672.314.

217.     Fla. Stat. §672.314 requires that merchantable goods:

   (1) pass without objection in the trade under the contract description; and
   (2) in the case of fungible goods, are of fair average quality within the description; and
   (3) are fit for the ordinary purposes for which such goods are used; and
   (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
   (5) are adequately contained, packaged, and labeled as the agreement may require; and
   (6) conform to the promises or affirmations of fact made on the container or label if any.

218.     The Ovens would not pass without objection in the trade because they do not perform as warranted—the Standard and Power Domes crack and fail to maintain their structural integrity after normal use. This defect renders the Ovens unfit for ordinary purposes for which such

goods are used.

219.     The Ovens are not adequately contained, packaged, and labeled because the labeling represents that, among other representations alleged above, the ovens are "durable" or "highly durable," which are qualities they do not have.

220.     For the same reason, the Ovens do not conform to the promises or affirmations of fact made on the container or label.

221.     NuWave thus breached the implied warranty of merchantability.

222.     Under Fla. Stat. § 672.315 "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

223.     NuWave's warranty does not exclude implied warranties of fitness for a particular purpose.

224.     NuWave advertised its oven as capable of being operated on any of its settings, including without limitation a setting of "350°F," by including voluminous cooking recipes indicating that those settings should be used.

225.     The ordinary consumer does not have the necessary scientific or technical background to know whether the Ovens and/or Domes could endure the temperatures and conditions ordinarily experiences when cooking items requiring a setting of "350°F."

226.     The Ovens and/or Domes routinely break when used on a setting of "350°F."

227.     As a direct and proximate result of NuWave's breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, Plaintiff Aguilera and Florida Subclass members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiff Aguilera and Florida Subclass members. Plaintiff and Florida Subclass members were damaged as a result of the defect in the Ovens.

228.     Plaintiff Aguilera and the Florida Subclass seek all damages permitted by law in an amount to be determined at trial.

**COUNT X**
**(In the Alternative, Breach of Implied Warranty of Merchantability**
**and Implied Warranty of Fitness for a Particular Purpose on Behalf**
**of the Texas Subclass Under Tex. Bus. & Com. Code §§ 2.314 and 2.315)**

229.     Plaintiff Mendoza re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

230.     Defendant is a "merchant" within the meaning of Tex. Bus. & Com. Code § 2.104.

231.     Ovens are "goods" within the meaning of Tex. Bus. & Com. Code § 2.105.

232.     Plaintiff Mendoza and the members of the Texas Subclass are "buyers" within the meaning of Tex. Bus. & Com. Code § 2.103.

233.     Under Tex. Bus. & Com. Code §2.314,

[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind…Goods to be merchantable must be at least such as[:]
(1) pass without objection in the trade under the contract description; and
(2) in the case of fungible goods, are of fair average quality within the description; and
(3) are fit for the ordinary purposes for which such goods are used; and
(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(5) are adequately contained, packaged, and labeled as the agreement may require; and
(6) conform to the promises or affirmations of fact made on the container or label if any.

234.     The Ovens would not pass without objection in the trade because they do not perform as warranted—the Standard and Power Domes crack and fail to maintain their structural integrity after normal use. This defect renders the Ovens unfit for ordinary purposes for which such goods are used.

235.     The Ovens are not adequately contained, packaged, and labeled because the labeling represents that, among other representations alleged above, the ovens are "durable" or "highly durable," which are qualities they do not have.

236.     For the same reason, the Ovens do not conform to the promises or affirmations of fact made on the container or label.

237.    NuWave thus breached the implied warranty of merchantability.

238.    Under Tex. Bus. & Com. Code §2.315 "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

239.    NuWave's warranty does not exclude implied warranties of fitness for a particular purpose.

240.    NuWave advertised its oven as capable of being operated on any of its settings, including without limitation a setting of "350°F," by including voluminous cooking recipes indicating that those settings should be used.

241.    The ordinary consumer does not have the necessary scientific or technical background to know whether the Ovens and/or Domes could endure the temperatures and conditions ordinarily experiences when cooking items requiring a setting of "350°F."

242.    The Ovens and/or Domes routinely break when used on a setting of "350°F."

243.    As a direct and proximate result of NuWave's breach of the implied warranty of merchantability and implied warranty of fitness for a particular purpose, Plaintiff Mendoza and Texas Subclass members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiff Mendoza and Texas Subclass members. Plaintiff Mendoza and Texas Subclass members were damaged as a result of the defect in the Ovens.

244.    Plaintiff Mendoza and the Texas Subclass seek all damages permitted by law in an amount to be determined at trial.

## COUNT XI
### (In the Alternative, Breach of Implied Warranty of Merchantability and Implied Warranty of Fitness for a Particular Purpose on Behalf of the West Virginia Subclass Under W. Va. Code, §§ 46-2-314 and 46-2-315)

245.    Plaintiff Russell re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

246.    Defendant is a "merchant" within the meaning of W. Va. Code, § 46-2-104.

247.     Ovens are "goods" within the meaning of W. Va. Code, § 46-2-105.

248.     Plaintiff Russell and the members of the West Virginia Subclass are "buyers" within the meaning of W. Va. Code, § 46-2-103.

249.     Under W. Va. Code, § 46-2-314,

> [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind…Goods to be merchantable must be at least such as[:]
> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.

250.     The Ovens would not pass without objection in the trade because they do not perform as warranted—the Standard and Power Domes crack and fail to maintain their structural integrity after normal use. This defect renders the Ovens unfit for ordinary purposes for which such goods are used.

251.     The Ovens are not adequately contained, packaged, and labeled because the labeling represents that, among other representations alleged above, the ovens are "durable" or "highly durable," which are qualities they do not have.

252.     For the same reason, the Ovens do not conform to the promises or affirmations of fact made on the container or label.

253.     NuWave thus breached the implied warranty of merchantability.

254.     Under W. Va. Code, § 46-2-315 "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

255.     NuWave's warranty does not exclude implied warranties of fitness for a particular

purpose.

256.     NuWave advertised its oven as capable of being operated on any of its settings, including without limitation a setting of "350°F," by including voluminous cooking recipes indicating that those settings should be used.

257.     The ordinary consumer does not have the necessary scientific or technical background to know whether the Ovens and/or Domes could endure the temperatures and conditions ordinarily experiences when cooking items requiring a setting of "350°F."

258.     The Ovens and/or Domes routinely break when used on a setting of "350°F."

259.     As a direct and proximate result of NuWave's breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, Plaintiffs and West Virginia Subclass members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiff Russell and West Virginia Subclass members. Plaintiff Russell and West Virginia Subclass members were damaged as a result of the defect in the Ovens.

260.     Plaintiff Russell and the West Virginia Subclass seek all damages permitted by law in an amount to be determined at trial.

## COUNT XII
**(In the Alternative, Breach of Implied Warranty of Merchantability
and Implied Warranty of Fitness for a Particular Purpose on Behalf
of the Colorado Subclass Under Colo. Rev. Stat. Ann. §§ 4-2-314 and 4-2-314)**

261.     Plaintiff Foston re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

262.     Defendant is a "merchant" within the meaning of Colo. Rev. Stat. Ann. § 4-2-104.

263.     Ovens are "goods" within the meaning of Colo. Rev. Stat. Ann. § 4-2-105.

264.     Plaintiff Foston and the members of the Colorado Subclass are "buyers" within the meaning of Colo. Rev. Stat. Ann. § 4-2-103.

265.     Under Colo. Rev. Stat. Ann. § 4-2-314,

[A] warranty that the goods shall be merchantable is implied in a contract for their

sale if the seller is a merchant with respect to goods of that kind…Goods to be merchantable must be at least such as[:]

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

266. The Ovens would not pass without objection in the trade because they do not perform as warranted—the Standard and Power Domes crack and fail to maintain their structural integrity after normal use. This defect renders the Ovens unfit for ordinary purposes for which such goods are used.

267. The Ovens are not adequately contained, packaged, and labeled because the labeling represents that, among other representations alleged above, the ovens are "durable" or "highly durable," which are qualities they do not have.

268. For the same reason, the Ovens do not conform to the promises or affirmations of fact made on the container or label.

269. NuWave thus breached the implied warranty of merchantability.

270. Under Colo. Rev. Stat. Ann. § 4-2-315 "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 4-2-316, an implied warranty that the goods shall be fit for such purpose."

271. NuWave's warranty does not exclude implied warranties of fitness for a particular purpose.

272. NuWave advertised its oven as capable of being operated on any of its settings, including without limitation a setting of "350°F," by including voluminous cooking recipes indicating that those settings should be used.

273. The ordinary consumer does not have the necessary scientific or technical

background to know whether the Ovens and/or Domes could endure the temperatures and conditions ordinarily experiences when cooking items requiring a setting of "350°F."

274.    The Ovens and/or Domes routinely break when used on a setting of "350°F."

275.    As a direct and proximate result of NuWave's breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, Plaintiff Foston and Colorado Subclass members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiff Foston and Colorado Subclass members. Plaintiff Foston and Colorado Subclass members were damaged as a result of the defect in the Ovens.

276.    Plaintiff Foston and the Colorado Subclass seek all damages permitted by law in an amount to be determined at trial.

## COUNT XIII
### (In the Alternative, Breach of Implied Warranty of Merchantability and Implied Warranty of Fitness for a Particular Purpose on Behalf of the Ohio Subclass Under Ohio Rev. Code Ann. §§ 1302.27 and 1302.28)

277.    Plaintiff DiSalvo re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

278.    Defendant is a "merchant" within the meaning of Ohio Rev. Code Ann. § 1302.01(5).

279.    Ovens are "goods" within the meaning of Ohio Rev. Code Ann. § 1302.01(8).

280.    Plaintiff DiSalvo and the members of the Ohio Subclass are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.01(1).

281.    Under Ohio Rev. Code Ann. § 1302.27,

[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind…Goods to be merchantable must be at least such as:
(1) pass without objection in the trade under the contract description; and
(2) in the case of fungible goods, are of fair average quality within the description; and
(3) are fit for the ordinary purposes for which such goods are used; and
(4) run, within the variations permitted by the agreement, of even kind, quality and

quantity within each unit and among all units involved; and
(5) are adequately contained, packaged, and labeled as the agreement may
require; and
(6) conform to the promises or affirmations of fact made on the container or label if
any.

282.     The Ovens would not pass without objection in the trade because they do not

perform as warranted—the Standard and Power Domes crack and fail to maintain their structural

integrity after normal use. This defect renders the Ovens unfit for ordinary purposes for which such

goods are used.

283.     The Ovens are not adequately contained, packaged, and labeled because the labeling

represents that, among other representations alleged above, the ovens are "durable" or "highly

durable," which are qualities they do not have.

284.     For the same reason, the Ovens do not conform to the promises or affirmations of

fact made on the container or label.

285.     NuWave thus breached the implied warranty of merchantability.

286.     Under Ohio Rev. Code Ann. § 1302.28 "[w]here the seller at the time of contracting

has reason to know any particular purpose for which the goods are required and that the buyer is

relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or

modified under section 1302.29 of the Revised Code an implied warranty that the goods shall be fit

for such purpose."

287.     NuWave's warranty does not exclude implied warranties of fitness for a particular

purpose.

288.     NuWave advertised its oven as capable of being operated on any of its settings,

including without limitation a setting of "350°F," by including voluminous cooking recipes

indicating that those settings should be used.

289.     The ordinary consumer does not have the necessary scientific or technical

background to know whether the Ovens and/or Domes could endure the temperatures and

conditions ordinarily experiences when cooking items requiring a setting of "350°F."

290.     The Ovens and/or Domes routinely break when used on a setting of "350°F."

291.     As a direct and proximate result of NuWave's breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, Plaintiff DiSalvo and Ohio Subclass members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiff DiSalvo and Ohio Subclass members. Plaintiff DiSalvo and Ohio Subclass members were damaged as a result of the defect in the Ovens.

292.     Plaintiff DiSalvo and the Ohio Subclass seek all damages permitted by law in an amount to be determined at trial.

### C.     <u>CONSUMER PROTECTION STATUTE CLAIMS</u>

### COUNT XIV
**(Violation of the Illinois Uniform Deceptive Trade Practices Act—
On Behalf of the Nationwide Class)**

293.     Plaintiffs re-allege and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

294.     The Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. Ann. 510/2 *et seq.*, prohibits "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…"

295.     815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: ". . . (5) represents that goods or services have . . . uses, benefits, or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

296.     NuWave engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. Ann. 510/2 when it represented that its Ovens are "high quality," "durable," "safe," and "shatter

resistant" when in fact they are not; and, when in response to requests for replacement products under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers products that contained the same defect.

297.    Defendant knew, or reasonably should have known, that its representations are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, Defendant was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

298.    As the direct and proximate result of Defendant's false, deceptive and/or misleading acts and statements, Plaintiffs and putative Nationwide Class members have suffered a loss of money or property through the out-of-pocket costs expended to purchase the Ovens.

**COUNT XV**
**(Violation of Illinois Consumer Fraud and Deceptive Trade Practices Act—**
**On Behalf of the Nationwide Class)**

299.    Plaintiffs re-allege and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

300.    The Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/1 *et seq*., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' …"

301.    NuWave engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. Ann. 505/2 when it represented that its Ovens are "high quality," "durable," "safe," and "shatter resistant" when in fact they are not; and, when in response to requests for replacement products under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers products that contained the same defect. NuWave also sold defective Standard and Power Domes to

consumers after the warranty expired, knowing that they were defective. At other times, NuWave upsold consumers to purchase the Power Dome even during the warranty period.

302.     NuWave knew, or reasonably should have known, that its representations were and are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, NuWave was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

303.     As the direct and proximate result of NuWave's false, deceptive and/or misleading acts and statements, Plaintiffs and members of the Nationwide Class have suffered a loss of money or property through the out-of-pocket costs expended to purchase the Ovens.

304.     Plaintiffs and the Nationwide Class seek all damages permitted by law in an amount to be determined at trial.

### COUNT XVI
### (In the Alternative, Violation of Florida Consumer Protection Laws—
### On Behalf of Florida Subclass)

305.     Plaintiff Aguilera s re-allege and incorporate each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

306.     Plaintiff Aguilera is authorized to bring this Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim pursuant to Florida Statute § 501.211, which creates a private right of actions for consumers including Plaintiff Aguilera and members of the Florida Subclass, who may seek declaratory relief, injunctive relief, actual damages, and attorney's fee and costs as provided in Florida Statute § 501.2105. All such relief is sought in this count, and Plaintiff Aguilera and all members of the Florida Subclass are entitled to such relief.

307.     Florida Statute § 501.204(1) prohibits "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

308.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." §
Florida Statute § 501.202.

309.    NuWave, at all relevant times, solicited, advertised, offered, provided and
distributed goods in the State of Florida, and thereby was engaged in trade or commerce as defined
by Florida Statute § 501.203(8).

310.    Plaintiff Aguilera, and all members of the Florida Subclass, at all material times was
a consumer as defined by Florida Statute § 501.203(7), and is entitled to seek the underlying relief.

311.    NuWave engaged in unfair and deceptive acts in violation of Fla. Stat. Ann. §
501.204 when it represented that its Ovens are "high quality," "durable," "safe," and "shatter
resistant" when in fact they are not; and, when in response to requests for replacement products
under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers
products that contained the same defect. NuWave also sold defective Standard Domes to consumers
after the warranty expired, knowing that they were defective. At other times, NuWave upsold
consumers to purchase the Power Dome even during the warranty period.

312.    Plaintiff Aguilera and members of the Florida Subclass relied on NuWave's
representations when purchasing their Ovens. Had they known that those representations were
false, they would not have purchased the Ovens or would have paid less for them.

## COUNT XVII
### (In the Alternative, Violation of Ohio Consumer Protection Laws—
### On Behalf of Ohio Subclass)

313.    Plaintiff DiSalvo re-alleges and incorporates each and every allegation set forth in
paragraphs one through one-hundred-sixteen above as if fully written herein.

314.    The Ohio Consumer Sales Practices Act declares unlawful unfair or deceptive acts
or practices in connection with a consumer transaction. *See* Ohio Rev. Code § 1345.02.

315.    NuWave engaged in unfair and deceptive acts in violation of Ohio Rev. Code §
1345.02 when it represented that its Ovens are "high quality," "durable," "safe," "shatter resistant,"
and "virtually indestructible" when in fact they are not; and, when in response to requests for

replacement products under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers products that contained the same defect. NuWave also sold defective Domes to consumers after the warranty expired, knowing that they were defective. At other times, NuWave upsold consumers to purchase the Power Dome even during the warranty period.

316.     NuWave knew, or reasonably should have known, that its representations were and are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, NuWave was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

317.     Plaintiff DiSalvo and members of the Ohio Subclass relied on NuWave's representations when purchasing their Ovens. Had they known that those representations were false, they would not have purchased the Ovens or would have paid less for them.

**COUNT XVIII**
**(In the Alternative, Violation of Colorado Consumer Protection Laws—**
**On Behalf of the Colorado Subclass)**

318.     Plaintiff Foston re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

319.     The Colorado Consumer Protection Act declares unlawful unfair or deceptive acts or practices in connection with a consumer transaction. *See* COLO. REV. STAT. ANN. § 6-1-101 et seq.

320.     NuWave engaged in unfair and deceptive acts in violation of COLO. REV. STAT. ANN. § 6-1-101 et seq. when it represented that its Ovens are "high quality," "durable," "safe," "shatter resistant," and "virtually indestructible" when in fact they are not; and, when in response to requests for replacement products under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers products that contained the same defect. NuWave also sold defective Domes to consumers after the warranty expired, knowing that they were defective. At other times, NuWave upsold consumers to purchase the Power Dome even during the warranty period.

321.     NuWave knew, or reasonably should have known, that its representations were and

are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, NuWave was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

322.     Plaintiff Foston and members of the Colorado Subclass relied on NuWave's representations when purchasing their Ovens. Had they known that those representations were false, they would not have purchased the Ovens or would have paid less for them.

**COUNT XIX**
**(In the Alternative, Violation of West Virginia Consumer Protection Laws—**
**On Behalf of the West Virginia Subclass)**

323.     Plaintiff Russell re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

324.     The West Virginia Consumer Protection Act declares unlawful unfair or deceptive acts or practices in connection with a consumer transaction. *See* W.VA. CODE ANN. § 46A-6-101 et seq.

325.     NuWave engaged in unfair and deceptive acts in violation of W.VA. CODE ANN. § 46A-6-101 et seq. when it represented that its Ovens are "high quality," "durable," "safe," "shatter resistant," and "virtually indestructible" when in fact they are not; and, when in response to requests for replacement products under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers products that contained the same defect. NuWave also sold defective Domes to consumers after the warranty expired, knowing that they were defective. At other times, NuWave upsold consumers to purchase the Power Dome even during the warranty period.

326.     NuWave knew, or reasonably should have known, that its representations were and are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, NuWave was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

327.     Plaintiff Russell and members of the West Virginia Subclass relied on NuWave's representations when purchasing their Ovens. Had they known that those representations were

false, they would not have purchased the Ovens or would have paid less for them.

## COUNT XX
### (In the Alternative, Violation of Texas Consumer Protection Laws—
### On Behalf of the Texas Subclass)

328.     Plaintiff Mendoza re-alleges and incorporates each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

329.     The Texas Consumer Protection Act declares unlawful unfair or deceptive acts or practices in connection with a consumer transaction. *See* TEX. BUS. & COM. CODE ANN. § 17.41 et seq.

330.     NuWave engaged in unfair and deceptive acts in violation of TEX. BUS. & COM. CODE ANN. § 17.41 et seq. when it represented that its Ovens are "high quality," "durable," "safe," "shatter resistant," and "virtually indestructible" when in fact they are not; and, when in response to requests for replacement products under NuWave's warranty, NuWave either refused to honor the warranty or sent consumers products that contained the same defect. NuWave also sold defective Domes to consumers after the warranty expired, knowing that they were defective. At other times, NuWave upsold consumers to purchase the Power Dome even during the warranty period.

331.     NuWave knew, or reasonably should have known, that its representations were and are deceptive, misleading, and unlawful, and intended that consumers rely on them. Alternatively, NuWave was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

332.     Plaintiff Mendoza and members of the Texas Subclass relied on NuWave's representations when purchasing their Ovens. Had they known that those representations were false, they would not have purchased the Ovens or would have paid less for them.

**D.      COMMON LAW CLAIMS**

## COUNT XXI
**(Unjust Enrichment—On Behalf of the Nationwide Class and All Subclasses)**

333.      Plaintiffs re-allege and incorporate each and every allegation set forth in paragraphs one through one-hundred-sixteen above as if fully written herein.

334.      This claim is pled in the alternative to the extent that it is determined that there is no express contractual relationship.

335.      Plaintiffs and members of the Nationwide Class and Subclasses conferred a benefit upon NuWave, which NuWave had knowledge thereof. Namely, Plaintiffs and members of the Nationwide Class and Subclasses paid money to NuWave for the Ovens.

336.      NuWave voluntarily accepted and retained the monetary benefit conferred under circumstances that make it unjust and inequitable for NuWave to retain it without paying Plaintiffs and members of the Nationwide Class and Subclasses the value thereof. Specifically, NuWave retained that benefit despite the fact that the Ovens were defective.

337.      When purchasing their Ovens, Plaintiff and Nationwide Class and Subclass members reasonably believed that the Ovens would perform as advertised and as warranted and would remain intact and continued to work after normal use.

338.      Plaintiffs and Nationwide Class and Subclass members received less than what they paid for in that the Ovens contain a defect that makes their Domes crack, rendering them useless.

339.      Plaintiffs and Nationwide Class and Subclass members conferred a benefit on NuWave by purchasing the Ovens. Had Plaintiffs and Nationwide Class and Subclass members known about the Ovens' defect—which resulted in the Ovens becoming unusable—they would not have purchased the Ovens or would have paid significantly less for them.

340.      NuWave should therefore be required to disgorge all profits, benefits, and other such compensation it obtained through its wrongful conduct.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated,

respectfully requests that this Court:

A.    Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the class in an amount to be determined at trial;

C.    Grant restitution to Plaintiffs and the class and require NuWave to disgorge its ill-gotten gains;

D.    Declare that NuWave violated the consumer protection laws alleged in this Complaint, and permanently enjoin NuWave from engaging in the wrongful and unlawful conduct alleged herein;

E.    Award punitive damages, to the extent permitted by law, in an amount to be determined at trial;

F.    Award Plaintiffs and the class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.    Award Plaintiffs and the class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.    Award all such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial in the instant action.

Dated March 1, 2019

*/s/ Jonathan M. Streisfeld*
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG**
**GILBERT**
Jeffrey M. Ostrow
Jonathan M. Streisfeld
Joshua R. Levine, Esq.
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
levine@kolawyers.com

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner (*pro hac vice*)
800 LaSalle Avenue
Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com

**FREED KANNER LONDON & MILLEN LLC**
Douglas A. Millen, Esq.
Robert J Wozniak, Esq.
Brian M Hogan
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521

*Counsel for Plaintiffs and the putative class*

## CERTIFICATE OF SERVICE

I, Jonathan M. Streisfeld, hereby certify that on March 1, 2019, a copy of the foregoing

SECOND AMENDED CLASS ACTION COMPLAINT was filed with the Clerk of the Court using

the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld

*Counsel for Plaintiffs and the putative class*